Hill, J.
Mrs. Faircloth sued the Ocilla Southern Railway Company for the homicide of her husband. She obtained a verdict for $15,000; the defendant’s motion for a new trial was overruled, and error is assigned thereon on the general grounds and on several special grounds. The evidence presents no conflict, and, substantially stated, is as follows: Plaintiff’s husband, on the day of the homicide and previous thereto, was employed to furnish cross-ties and wood to the railway company. This material was delivered to the company at different points on the line of the railroad from time to time by the decedent. The company paid the decedent so much a cord. He furnished wood and cross-ties to other persons also. In the original petition it is alleged that “it had been the custom of said railroad company to permit petitioner’s husband to ride upon said train *729 in going over said line in connection with the cross-tie and wood business.” By an amendment it was alleged that by reason “ of the employment of decedent to furnish wood and cross-ties to the defendant, he was allowed transportation on the trains of said defendant, and particularly upon its freight-trains, without requiring any ticket and without compensation other than the benefit defendant received from the services of the said Faireloth in furnishing, under contract, wood and cross-ties for the use of the defendant. Such transportation was allowed to the said Faireloth by said defendant through its president, <T. A. J. Henderson, and its general manager, D. C. Smith; and the agent in charge of said train and other trains of defendant knew that said Faireloth was allowed such transportation for the reasons aforesaid, and they recognized his right to such transportation, and. he was therefore permitted on said train by the conductor thereof, all of which was duly authorized by said corporation. And the use of the train for the transportation of said Faireloth was known to and acquiesced in by said defendant, through J. A. J. Henderson, its president, and D. C. Smith, its general superintendent, and all of its officers and agents in actual operation of such trains, particularly the conductor thereof' who was in charge of such train.”
The evidence in support of these allegations is as follows: The partner of the decedent in the cross-tie and wood business testified that “they were authorized to ride on the trains of the Ocilla Southern Railroad without getting tickets.” Another witness testified that he had traveled on the trains with the decedent several times, and “ the conductor, or whoever was in charge of the operation of the trains, did not require decedent to pay any fare.” The plaintiff testified that she had “a talk with Mr. Henderson, who is the president of the road, about [her] husband being on that train and being killed, in which he said that he was in the wrong about allowing [her] husband to ride on the train, and he' was in the wrong by riding on them.” A witness testified that he heard the conductor ask the decedent, on the day of the homicide, “if he was not going with them, and he said he was.” The train on which the decedent was riding when he was killed consisted of an engine and three boxcars without any caboose attached, there were no passengers, *730 and tbe train was 'the first freight-train tliat ran over the road. There was no place on the train for passengers to ride, and the decedent, with the conductor and several other employees of the road, got up on top of one of the box-cars to ride. The box-cars were loaded with cross-ties. The car on which the decedent was riding was derailed, and the decedent was killed by the box-cars with cross-ties falling upon him. The cross-ties where the boxcar was derailed “were rotten; they were little saplings, not bigger than a stove-pipe, too small for cross-ties, and so rotten that the ends would break off.” The foregoing is a statement of the material evidence relating to the homicide, and the only issue before the trial court, as before this court, is what it shows as to the relation of the decedent to the railroad company at the time of his death.
Was the decedent a passenger, a trespasser, or a licensee? It is not insisted by the defendant in error that he was a passenger, but it is insisted that he was a licensee. The plaintiff in error insists that he was a trespasser. The record contains no evidence tending to show any express authority from any official of the railroad company permitting the decedent to ride on the cars of the company without the payment of fare. The evidence is probably sufficient to authorize the conclusion that there was a custom, acquiesced in by the conductor in charge of trains, permitting the decedent to ride without the payment of fare. This custom, according to the evidence, seems to have been limited to riding on trains used and designed for the transportation of passengers. There is no circumstance in evidence indicating or tending to indicate that any implied permission was ever granted to the decedent to ride upon the freight-trains of the defendant company. Indeed there is no evidence that the company ever transported passengers on its freight-trains, the evidence tending to show that the freight-train on which the decedent was killed was the first freight-train that had ever been used by the railroad company for any purpose, and therefore that no such custom could have arisen as to freight-trains. All the evidence as to the existence of a custom permitting the decedent to ride on the trains of the company relates to those trains which carried passengers. A license to ride on trains designed and used for the transportation of passengers cannot be relied *731 upon as permission to ride upon trains not used or designed for the transportation of passengers. One who enters and rides upon a car or train which he knows, or by the exercise of reasonable diligence would know, is not used for the transportation of passengers and manifestly not designed for that purpose, cannot be considered a licensee, but can only be considered as a trespasser. Morris v. Ga. R. Co., 131 Ga. 475 (62 S. E. 579). The officials of a railroad company might be willing to permit a person to ride upon trains designed for passengers, but not be willing to permit persons to ride upon engines, freight-cars, or vehicles not used or designed for the transportation of passengers, and a license to ride as a passenger on cars used for the transportation of passengers without the pajment of fare gives no authority to ride upon freight-cars, engines, hand-cars, and other vehicles of the common carrier not designed for the trans portation of passengers. Higgins v. Cherokee R. Co., 73 Ga. 149. The only circumstance which can be claimed to show permission to the decedent to ride upon any other character of vehicle or car of the company was an implied invitation extended to him by the conductor on the day of the homicide. In the decision in the case of Morris v. Ga. B. Co., supra, it was said: "It has been held in many courts and in numerous cases, that, in the absence of any rule or practice to the contrary, section foremen, track superintendents, locomotive engineers, firemen, and conductors of freight-trains have no authority to permit a person to ride on a car, engine, or train obviously not intended for the use of passengers, and thus • transíorm into a passenger one who would otherwise be regarded as a trespasser. . . In an action against a railroad company for damages from personal injuries sustained while riding, by permission or upon the invitation of an employee, on a conveyance of the company palpably not designed for the transportation of passengers, the onus is on the plaintiff to show that the employee had authority from the company to permit him to so ride, or that it was the custom for persons to so ride, known to the officials of the company having charge or supervision of the matter; the presumption, in the absence of such proof, being that the plaintiff had no right to be there and that he was, therefore, a trespasser.”
No custom or rule of the defendant company is shown for *732 permitting passengers to ride on freight-cars. It is doubtful if a lawful custom could arise that would give the right to one, not an employee in the line of his duty, to ride on top of freight-cars in positions of manifest danger. If one' undertakes so to ride, he does it at his own risk. And the company is under no duty except that duty which it owes to a trespasser, not wantonly and wilfully to injure him. In Hoar v. Maine Central R. Co., 70 Me. 65 (35 Am. R. 299), it was held: “In the absence of proof that a railway company is accustomed to carry passengers upon hand-cars, one who is injured while thus riding has no cause of action against the company, although invited thus to ride by the section foreman.” The conductor who in the present case was in charge of the freight-train, consisting of an engine and three box-cars, had no right to impose upon the defendant corporation the onerous responsibilities arising from the relation of a common carrier of passengers. He had no right to accept the decedent as a passenger and bind the company to extraordinary diligence for his safe passage, by inviting or permitting the decedent to ride upon the top of the box car — -a place of manifest danger. And the decedent, in accepting the risk of this mode of conveyance, assumed all of the extra and unusual risks arising from the position. Conceding that the evidence may have authorized the conclusion that the decedent had license to ride on the trains of the defendant .designed and used for the transportation of passengers, such license could not be extended to give the decedent the right to be carried at the risk of the company by the unusual mode of conveyance which he had voluntarily adopted. Entertaining this view of the law, under the facts of the case which are not in dispute, we think that the verdict against the defendant was unauthorized, and the motion for a new trial should have been granted. This opinion makes it unnecessary to consider and decide the special assignments of error.

Judgment reversed.

Jenkins, P. J., and Stephens, J., concur.