15349.   LANIER *v.* BUGG, receiver.

1. One who is transported over the line of a railroad company by virtue of a gratuitous pass, providing by its terms that "the person accepting and using it thereby assumes all risk of accident to person or property," is not entitled as of legal right to any degree of diligence at the hands of the company or its servants, and the company is not liable for an injury to him because of *mere negligence*, though gross, the parties having, as they were free to do, provided otherwise by their contract. The company cannot be held liable in such case unless the injury was inflicted wilfully and wantonly. *Holly* v. *Southern Ry. Co.*, 119 *Ga.* 767 (47 S. E. 188); *Wright* v. *Central of Ga. Ry. Co.*, 18 *Ga. App.* 290 (1) (89 S. E. 457); *Hearn* v. *Central of Ga. Ry. Co.*, 22 *Ga. App.* 1 (95 S. E. 368); *Charleston & Western Carolina Ry. Co.* v. *Thompson*, 13 *Ga. App.* 528 (80 S. E. 1097); Charleston & Western Carolina Ry. *v.* Thompson, 234 U. S. 576, 578 (34 Sup. Ct. 964, 58 L. ed. 1476).

   (*a*) This rule will apply to an employee who is riding upon such a pass, where his travel is in no way connected with his employment. · *Charleston & Western Carolina Ry. Co.* v. *Thompson*, supra; New York Central R. Co. *v.* Mohney, 234 U. S. 576 (40 Sup. Ct. 287, 9 A. L. R. 496, 64 L. ed. 502); *Tharp* v. *Central of Georgia Ry. Co.*, 31 *Ga. App.* 598 (2) (121 S. E. 592).

2. "Negligence relatively to the safety of any particular person is the breach of some diligence due to that person. Where no duty of diligence appears relatively to the person injured, there can be no presumption of its breach." *Holland* v. *Sparks*, 92 *Ga.* 753 (1) (18 S. E. 990). In an action against a railroad company for the homicide, by the running of its cars, of one riding upon the train by virtue of a free pass containing the stipulation set out in the first headnote, the burden is on the plaintiff to prove that the acts or omissions of the company causing the death were wilful or wanton. No presumption of wilfulness or wantonness

can arise against the company under the Civil Code, § 2780. *Southern Ry. Co.* v. *Davis*, 132 *Ga.* 812 (3), 818 (65 S. E. 131); *Tice* v. *Central of Ga. Ry. Co.*, 25 *Ga. App.* 346 (1 *b*) (103 S. E. 262).

3. Evidence that the train was running at a speed of forty to forty-five miles per hour when the wooden coach in which the decedent was riding was derailed, that one of the wheels of this coach had a "crack," an "old break," in it "about four inches long," causing it to crush when it struck the ties, that many of the ties were badly decayed, so that the spikes in them were insecure, and consequently the rails unsteady, and that the conductor, when the car left the track, did not instantly give to the engineer a stop signal, and that the train thereafter continued to run with unslackened speed for one hundred and fifty to two hundred yards, until the coach was wrecked and the decedent, with several others, killed, did not, without more, show that the decedent's death was the result of wilful or wanton misconduct on the part of the railroad company or its servants in the acts and omissions thus indicated, from which the catastrophe resulted. It follows that the court did not err in awarding a nonsuit.

DECIDED APRIL 25, 1924.

Action for damages; from city court of Atlanta—Judge Reid. October 25, 1923.

*Hewlett & Dennis,* for plaintiff.

*Colquitt & Conyers,* for defendant.

BELL, J. Mrs. M. F. Lanier brought her action for damages against B. L. Bugg, as receiver of the Atlanta, Birmingham & Atlantic Railroad Company, for the value of the life of her son, upon whom she was dependent and who was killed while traveling upon the defendant's train by virtue of a gratuitous pass containing the provision set out in the first headnote. The trial resulted in a nonsuit, and she brings the case here upon exceptions to that judgment.

The plaintiff's son was an employee of the railroad company, but was traveling at the time upon a mission wholly disconnected from his employment. It was averred that his death was the result of wilful and wanton misconduct upon the part of the railroad company in certain respects specified in the petition, proof of which the plaintiff attempted by the evidence hereinafter referred to.

Only the third headnote seems to require elaboration. We do not understand that the plaintiff in error takes issue with the propositions announced in the first and second headnotes. It is contended, however, that the evidence was such as to make a case of wilful and wanton misconduct, either by omission or commission, or both, from which the decedent lost his life.

With respect to the condition of the track one of the witnesses, W. P. West, testified: "We looked at the wreck and saw that the train had jumped the track. . . The track was spread, . . and where it was spread the wheels went around on the cross-ties and cut the cross-ties. . . Where the car first made an imprint on the track the cross-ties were rotten. When this car-wheel hit them they just spread out like a box that they had run over. Just made a bunch of rotten splinters; just crushed all to pieces. The rail had slipped, I judge, two or three inches, may be, where the seat was on the track. . . I made an examination of the spikes up and down the track. There were some that were missing and some that had not been driven up, had been driven down, and the rotten ties would not hold some of them. I kicked one out with the toe of my shoe. In the thin part of the wheel, after it left what you might call the tire part, there was a crack about four inches; that was an old break. The other was fresh." The testimony of the witness West is representative of that of several other witnesses relating to the same points. It appears that the cracked wheel was in some way disconnected from the car and was found to have about one third of it broken off, presumably because of the crack or old break described by Mr. West. The evidence shows that the train was running at a speed of 40 to 45 miles per hour at the time of the derailment. The coach derailed was a wooden coach. One or more of the witnesses testified that when it was first noticed that something was wrong the conductor was in the coach subsequently derailed, and that he got up and went forward into another car. He did not give a stop signal in the car which he left. It does not appear that he did not do so later. The evidence tends to show that the speed of the train was not perceptibly checked until it had run something like 150 yards after the derailment. The coach so derailed was then wrecked when it reached a trestle, falling over an embankment with the result that it was completely demolished and several persons killed.

"Gross neglect is the want of that care which every man of common sense, how inattentive soever he may be, takes of his own property." Civil Code (1910), § 3473. Though the evidence may show that the railroad company was guilty of gross negligence as defined above, the term as thus employed should not be confused with "wilful and wanton misconduct," as is sometimes done

by jurists and law-writers. In the latter sense the evidence did not show gross negligence. In a case of this sort a recovery could not be had unless the death was the result of wilfulness or wantonness on the part of the railroad company or its servants. The defendant would not be liable unless its conduct "was such as to evidence a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent." *Central of Georgia Ry. Co.* v. *Moore, 5 Ga. App.* 561 (1), 565 (63 S. E. 642) ; *Harris* v. *Reid, 30 Ga. App.* 187 (117 S. E. 256). We do not think that the evidence was sufficient to establish the quality of wilfulness or wantonness in the acts or omissions from which the catastrophe resulted. See *Ocilla So. Ry. Co.* v. *Faircloth, 27 Ga. App.* 728 (3) (110 S. E. 46) ; *Dowman-Dozier Mfg. Co.* v. *Central of Ga. Ry. Co., 29 Ga. App.* 187 (1) (114 S. E. 815) ; *Southern Ry. Co.* v. *Davis, 132 Ga.* 812 (3) (65 S. E. 131) ; *Jackson* v. *Western & Atlantic R. Co., 146 Ga.* 151, 154 (90 S. E. 963) ; *Chattanooga &c. R. Co.* v. *Liddell, 85 Ga.* 482 (5), 495 (11 S. E. 853, 21 Am. St. Rep. 169) ; *Charleston &c. R. Co.* v. *McElmurray, 16 Ga. App.* 504 (3) (85 S. E. 804), and cases therein cited. In the *Liddell* case, supra, the petition alleged that "the injury was sustained on account of the gross carelessness and negligence of the defendants in operating the railroad, and by the defective, improper and worn out rails, machinery, tracks and coaches which were being used." The evidence adduced at the trial showed (p. 485) : "The cross-ties were of the length used in the narrow gauge track, and the track had but recently been changed from a narrow to a broad gauge. The spikes which held the iron rails to the cross-ties were driven in near the ends of the ties, some of them so close as to be forced through the ends of the ties, as was discovered after the accident. On one side of track the ties appeared as if no spikes had been driven into them. The track was somewhat curved on approaching the trestle, and on examination it was found that the outside of the curve was not as much higher than the inside as is usual on a railroad track. The train was not running rapidly but only about twelve miles an hour, and the coach left the track thirty or forty feet before reaching the trestle, which was twenty-four feet high, and on which it rolled for some distance before falling off. It was a narrow

gauge coach, placed upon broad gauge freight trucks, which had no spring bolsters as ordinary passenger-coach trucks have. Generally, what are called safety-chains, extending from the corner of the coach to the trucks to keep the truck from slewing in case it goes off the track, are used on passenger coaches, but there were none on this coach; and there was testimony that the attention of some of the company's servants was called to this when the coach was put in use, four or five days before the accident, and that the car-inspector said he could not put on safety-chains unless he had them—that it was the best he could do, and it was safe; and after the accident he said it was as safe as he could make it with the material that had been furnished him to build the car with. The bolt used to fasten the car to the trucks was a narrow gauge bolt." The Supreme Court held that this evidence was not enough to authorize the court to charge the jury upon the subject of punitive damages. The principle involved in the instant case is very similar, if not the same.

The fact that the conductor did not instantly give a stop signal to the engineer upon notice that something was wrong in the movement of the coach did not show wantonness. It could hardly be assumed that he was governed by a conscious or reckless indifference to the safety of others when he himself was in the same peril. It does not clearly appear that he appreciated the danger as did the witnesses who testified, nor that he failed immediately to give the signal in the car next ahead, into which he went.

In the case of New York Central R. Co. *v.* Mohney, 252 U. S. 152 (supra), relied upon by the plaintiff in error, it appears that the engineer ignored and ran past two block signals. These signals distinctly indicated that there was danger ahead. They gave to the engineer actual notice of that fact. In Alabama Great Southern Ry. Co. *v.* Hill, 90 Ala. 71 (8 So. 90, 9 L. R. A. 442, 24 Am. St. Rep. 764), the railroad company actually put down "old" rails, and must have known of their insufficiency. In the case at bar there was nothing to show that the railroad company had consciously or abandonedly neglected the safety of its tracks and appliances. For all that appears, they may have been once in good order, and the company negligently assumed such condition to have continued. Whether the ruling in the cited Alabama case would be followed in this State upon similar facts, we think it is distinguishable

from the case now before us. Indeed, the facts in that case bore a complexion much like those in the *Liddell* case, from which we have quoted above, and in which our own Supreme Court reached an entirely different conclusion. The evidence fails to show that the defendant was guilty of that entire absence of care which would raise the presumption of conscious indifference, or that, with reckless indifference, it acted "with actual or imputed knowledge that the inevitable or probable consequence of [its] conduct would be to inflict injury." See *Harris* v. *Reid,* supra.

The court did not err in granting the judgment of nonsuit.

*Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., disqualified.*