### 16805. BROOKS *v.* BUGG, receiver.

1. " 'As a general rule, a stipulation in a free pass given by a carrier, to the effect that the person who accepts it assumes all risks of injury in transportation, is enforceable; and as to a passenger who has accepted transportation under such a pass a carrier is liable only for injuries resulting from wantonness or wilful negligence.' *Charleston &c. Ry. Co.* v. *Thompson*, 13 *Ga. App.* 528 (80 S. E. 1097)." *Wright* v. *Central of Ga. Ry. Co.*, 18 *Ga. App.* 290 (89 S. E. 457).

2. Where a common carrier entered into a contract with a telegraph company, by which each was to render to the other certain services, and the carrier agreed to transport free of charge "all persons in the employ of the telegraph company when traveling on the business of said company," and under this contract the carrier issued to a telegraph lineman an annual pass, and the lineman used the pass on a trip for his individual pleasure or on business of his own, the pass when being so used was "gratuitous and not in consideration of services," and "the stipulations contained in it and on which it is accepted, including one exempting the company from liability in case of injury, are enforceable."

DECIDED JANUARY 12, 1926.

Action for damages; from Fulton superior court—Judge Humphries. April 8, 1925.

On Sunday morning, March 12, 1922, Walter M. Brooks, a lineman in the employ of the Western Union Telegraph Company, was killed in a wreck at Camp Creek, Fulton County, Georgia, while riding on a passenger-train of the Atlanta, Birmingham & Atlantic Railway Company, which road was then being operated by B. L. Bugg as receiver. The plaintiff, as the wife of the deceased, sued the road for damages, alleging negligence. The defendant filed a plea denying liability, and further pleaded that the deceased was riding on a free pass issued to him by the defendant, which was in the following words: "Atlanta, Birmingham & Atlantic Railway Company, B. L. Bugg, receiver. 1922. B. 2253. Pass Mr.

W. M. Brooks, account lineman, Western Union Tel. Co., between all stations, until Dec. 31, 1922, unless otherwise ordered, and subject to conditions on back valid when countersigned by myself, A. V. B. Gilbert or Geo. M. Gentry. Countersigned by B. L. Bugg, receiver, A. V. B. Gilbert." The back of the pass reads as follows: "This pass is not transferable, and is void if presented by any other than the person or persons shown thereon, or if any alteration, addition, or erasure is made on it. The person accepting and using it thereby assumes all risk of accident to person or property, states that he or she is not prohibited by law from receiving free transportation, and agrees to make only such use of the pass as is permitted by Federal and State laws. Good on freight trains. A. V. B. Gilbert. I accept the above conditions. W. M. Brooks."

On the trial of the case it was shown that when Brooks was killed he was not traveling on business for the telegraph company, but on an enterprise of his own. At the conclusion of the testimony the judge, on motion of counsel for the defendant, directed a verdict in favor of the railway company; and the plaintiff excepted.

*Branch & Howard,* for plaintiff.

*Colquitt & Conyers, Dorsey, Howell & Heyman, Mark Bolding, Sidney Smith,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.) In the brief for the plaintiff it is stated that "In view of the fact that the court directed the verdict on the theory that the deceased was not a passenger for hire or upon a valuable consideration, and his release of defendant from liability barred a recovery by plaintiff, and further that plaintiff does not insist that there was any evidence of gross and wilful negligence, the question before this court for decision is simply this: Was the deceased a passenger for hire or upon a valuable consideration? If he was, the release in the pass was void, and the plaintiff would be entitled to recover." In the brief of defendant in error it is insisted that "the case of *Lanier* v. *Bugg,* 32 *Ga. App.* 294 (123 S. E. 145), completely controls . . the case at bar in every single phase." In that case the deceased, for the value of whose life the suit was brought, came to his death in the same catastrophe as did Brooks, the husband of the plaintiff in this case, and in that case this court held that there could be no recovery "unless the injury was inflicted wilfully and wantonly."

So it seems that the only question to be determined is that stated above, "Was the deceased a passenger for hire or upon a valuable consideration?"

In the brief for the plaintiff is the following: "The status of the deceased and the character of his transportation is proven by the evidence, as we contend, without conflict, to have been that of a passenger for hire or upon a valuable consideration. He was employed by the Western Union Telegraph Company as a lineman. He was assigned to the line of the telegraph company that paralleled the defendant's railroad between certain points on the railway line. The railway company owned the lines, poles, etc., and leased them to the telegraph company. The railroad company and the telegraph company entered into a contract with regard to the lease and operation of the telegraph line. The telegraph company agreed to maintain the line along the *entire* route of defendant's railroad; to furnish a line and instruments 'for its use, and also for the furnishing of telegraph service to the railroad by the telegraph company over *all* of the lines of the telegraph company.' In return the railroad company agreed to transport free of charge over the railroads covered by this agreement all persons in the employ of the telegraph company when traveling on business of the telegraph company. It will thus be seen that a vital part of the consideration for the lease was the furnishing of telegraphic service to the railroad and the maintenance of the lines. It being the duty of the telegraph company to maintain the lines, a part of the consideration beneficial to the railroad in paying for this service was to transport the linemen of the telegraph company. Under this agreement an annual pass was issued to Brooks by the railroad company, at the request of the telegraph company. It states it was issued 'account lineman, Western Union Telegraph Company,' clearly meaning that it was charged to the telegraph company under the contract. The pass further was good between all stations. This pass is not similar to the annual pass issued by the railroad to its employees, but more in the nature of a paid-up mileage ticket, in that it was issued by virtue of the contract between the two companies and paid for by the service rendered by the telegraph company to the railroad. The railroad received no actual money for the use of its property, nor paid out anything for the telegraph service it received. The telegraph company paid the

railroad in service for its benefits, and the railroad company paid the telegraph company for its benefits in service to it. Surely it can not be doubted under these circumstances that there was a valuable consideration paid by the telegraph company for the 'pass,' and, as we view it, it would make no difference who paid the railroad or how it was paid, the 'pass' can not be viewed as free or a gratuity."

Thus it will be seen that plaintiff based her right to recover upon the idea that the transportation furnished the deceased was paid for; that the consideration therefor was certain services which the telegraph company rendered the railroad company. But, under the contract, what was the obligation of the railroad company to the telegraph company? The contract expressly provided that transportation was to be furnished the employees of the telegraph company *"when traveling on the business of the company."* (Italics ours.) This is all that the railroad company obligated itself to do. Anything beyond that would be without consideration, a mere gratuity. Even should we concede that when the pass was being used on business for the telegraph company, it was not a gratuity, but was for a consideration when so used, this would apply only when the pass was being used on business for the telegraph company, and not when being used by the person to whom it was issued when traveling for his own pleasure or on his individual business, and on a trip in no way connected with the telegraph company. On such a trip he would be nothing more than the guest of the company. The transportation would be furnished him without compensation, a gratuity, and the pass would be in reality and in common parlance "a free pass." Indeed, this question seems to have been absolutely settled by the appellate courts of this State and by the United States Supreme Court. The pass in this case was an interstate pass, the terms of which are quoted in the foregoing statement of facts. The telegraph lineman, Brooks, was not required to sign the pass whereby the railroad company was exonerated from liability to him, but signed it freely and voluntarily, and is bound by its provisions. In Charleston & Western Carolina Ry. Co. *v.* Thompson, 234 U. S. 576 (34 Sup. Ct. 964, 58 L. ed. 1476), the headnotes are as follows: "Under the free pass provision of the Hepburn act of June 29, 1906, a free pass issued by a railroad company between interstate points to a member of the

family of an employee is gratuitous and not in consideration of services of the employee. As a pass issued to a member of the family of an employee of a railroad company is free under the provision of the Hepburn act permitting it to be issued, the stipulations contained in it and on which it is accepted, including one exempting the company from liability in case of injury, are valid." In the opinion in that case (pp. 577, 578), Mr. Justice Holmes said: "The main question is whether when the statute permits the issue of a 'free pass' to its employees and their families it means what it says. The railroad was under no obligation to issue the pass. It may be doubted whether it could have entered into one, for then the services would be the consideration for the duty and the pass and by § 6 it was forbidden to charge 'a greater or less or different compensation' for transportation of passengers from that of its published rates. The antithesis in the statute is between the reasonable charges to be shown in its schedules and the free passes which it may issue only to those specified in the act. *To most of those enumerated the free pass obviously would be gratuitous in the strictest sense, and when all that may receive them are grouped in a single exception we think it plain that the statute contemplates the pass as gratuitous in the same sense to all.* It follows, or rather is saying the same thing in other words, that even on the improbable speculation that the possibility of getting an occasional free pass entered into the motives of the employee in working for the road, the law did not contemplate his work as a conventional inducement for the pass but on the contrary contemplated the pass as being what it called itself, free. As the pass was free under the statute, there is no question of the validity of its stipulations. This was conceded by the Court of Appeals, as we have stated, and is established by the decisions of this court. Northern Pacific Ry. Co. *v.* Adams, 192 U. S. 440, Boering *v.* Chesapeake Beach Ry. Co., 193 U. S. 442." (Italics ours.) The provision in the Hepburn act of June 29, 1906, c. 3591, 34 Stat. 584, sec. 1, which permitted common carriers to issue free passes, grouped in a single exception employees and their families and linemen of telegraph and telephone companies. This being true, and free transportation in Georgia being provided on the same terms as in the Hepburn act, supra, as amended June 8, 1910, 36 Stat. 546 (*Wright* v. *Central Ry. Co.,* supra), we are constrained

to hold that it is "plain that the statute contemplates the pass as gratuitous." See *Holly* v. *Southern Ry. Co.*, 119 Ga. 767 (47 S. E. 188), and *Lanier* v. *Bugg,* supra.

> *Judgment affirmed. Broyles, C. J., and Luke, J., concur.*