27681. THOMPSON *v.* POWELL *et al.,* receivers.

Decided October 21, 1939.

*Ozé R. Horton,* for plaintiff.
*E. S. Ault, J. A. Wright,* for defendants.

Sutton, J. E. H. Thompson brought suit against L. R. Powell Jr. and Henry W. Anderson, receivers of the Seaboard Air-Line Railway Company, to recover damages caused by the alleged negligence of the defendant. It was alleged, that he was driving his automobile in Cedartown, Georgia, on Second Street, on January 21, 1938; that in order to get to his destination he had to cross the defendant's tracks; that the approach to the crossing was a rather steep incline; that on his left or eastward his view was obstructed by a warehouse of the Cedartown Yarn Mills and by a string of box-cars which were placed near the street on a side-track of the defendant; that as he approached the crossing he slowed down, and, hearing no train coming, proceeded to mount the incline to the

crossing cautiously, and, due to the abrupt rise in the street and the pull which was necessary to be made to ascend to the tracks, he pressed down on the accelerator of his car to obtain the full horsepower of the car and to get up to the crossing and over it in the shortest possible time, he all the while using all ordinary care to see and determine whether or not a train was approaching from either direction; that he mounted the said incline and came upon the said tracks, and upon doing so discovered a train rapidly approaching from the east and from Cedartown; that he first observed the train when it was about 150 feet away, and as it came from behind the cars which were parked on the side-track south of the main line; that he immediately attempted to speed up his car, he being already on the main track, so that he might escape being struck by the oncoming train, and in so doing the motor of the car went dead because of the sudden onrush of gasoline into the carburetor; that upon seeing that it would be impossible to get off the main line before the train struck, he quickly jumped out of the car just in time to avoid being struck, the automobile being struck by the train, hurled clear of the tracks, and completely demolished; that the defendant was negligent, (a) in running the train at a reckless rate of speed through a thickly populated community and within the limits of a municipality; (b) in failing to give any warning by bell, whistle, or otherwise; (c) in failing to check the speed of the train as it approached the crossing, at a time when the train was running late on its schedule, and at a time and place where the presence of others ought to have been anticipated; (d) in failing to keep a lookout ahead.

On the trial the plaintiff testified as follows: "On January 21, 1938, I was going southward along Second Street in Cedartown, Georgia, towards the old Export Village. There are about 65 houses over there. To get over to that part of the village south of the tracks I had to cross the Seaboard tracks. I have crossed these tracks several times in the past. There is a sharp incline in the road just before going onto the tracks. There are three tracks at this point. The track from Cedartown runs nearly straight until it reaches a point about 250 feet from Second Street when it turns southward and crosses Second Street on a straight line. According to steps it is 70 yards from Second Street back to the point of the curve. [At this juncture counsel for defendant agreed that the

engineer could see and did see the car on the crossing 150 feet before he reached the crossing.] On the day mentioned and at about 6 p. m. or 6.15 p. m., which was after dark, I was in my 1931 model-A Ford going in the direction of Norma Williams's house. There were cars on the first track on the north side of the main line right up to the crossing. The Cedartown Yarn Mills has a warehouse on the east side of Second Street, and the cars obscured my view so that I couldn't see a train coming until I was already on the main line. I put my car in low gear and started across. When the front wheels had gone to the center of the main line, which was the second track, I saw the headlight of a Seaboard passenger-train coming about 150 feet away. This frightened me. I stopped because I thought I had not reached the main track. I discovered I was on the main track and stepped on the gas to go ahead, which killed the motor. I tried to crank the motor, but couldn't. I jumped out and tried to push the car off the tracks, but couldn't, and jumped away just in time to keep from getting struck myself. I didn't hear any bell or whistle, except a distress signal which the engineer blew just before striking my car. The car was worth $250, and nothing at all afterwards. Everything happened so quickly I didn't know just what did happen. When the train had stopped, the crossing was blocked by the last car. There were four cars in the train, to the best of my recollection. I was going to a dance, and was going for my girl. I wasn't in any hurry. My car was in better shape when it was struck by the train than it was when I bought it. It was a 1931 model-A Ford roadster and in good condition. I paid $150 and a Chevrolet car for it, and still owe $84 on it. Nothing went wrong with the car to cause it to stop the first time. After the front wheels of the car got on the main track and I saw the train coming, I thought it best to stop the car and voluntarily stopped it. If I had not stopped the car I could have either driven across or backed off the track and avoided the accident, but I did not realize I was on the main-line track until after I had voluntarily stopped the car on the track. When I realized that I had stopped the car on the main-line track I tried to start the car again, but put too much gas on and killed the motor. I then jumped out of the car and tried to push it off the track, and failing to do this I jumped out of the way just before the train struck the car. The train was 150 feet away when I saw

it coming, and I stopped the car and tried to start it again and failed on account of putting too much gas, and then got out and tried to push the car off the track and jumped out of the way while the train was running 150 feet to the crossing."

F. W. Jackson, who lived near the crossing, testified, that he heard the train blow for the Furnace Street crossing, about a quarter of a mile east of the Second Street crossing, and did not pay any more attention until he heard the distress signal some time before the train reached the Second Street crossing; that he never saw any one around the automobile until just before the engine struck, when he saw a man dart around the car back to the north side of the track; that at the time he first saw the car there was sufficient time for the car to have been driven off the track had the motor been running; that the train was stopped immediately after the crash; that he never noticed whether the train cleared the crossing or not; and that he thought the train was stopped as soon as possible.

J. H. Dunbar, engineer for the defendant testified that he was engineer on the train which struck the plaintiff's car; that the train was about forty minutes late, had six cars of a total length of about 650 feet, including the engine, and was running at the rate of about thirty or thirty-five miles an hour when he first saw the automobile and put on the emergency brakes; that the bell was ringing and had been ringing all the way from Cedartown, he having turned on the automatic bell-ringer when leaving the depot; that he blew the crossing signal, two longs and a short and a long for Furnace Street, and had started and was still blowing the signal for Second Street when he discovered the automobile on the track, whereupon he blew a distress signal and was still blowing it when the engine struck the automobile; that the car was hurled to the right of the track and completely demolished; that there were six cars in the train, and the fourth car of the train was on the crossing when it stopped; that as soon as he saw the automobile he immediately put the brakes in emergency, and applied sand to the rails, and did everything in his power, after seeing the automobile, to prevent striking it; that after leaving the station and while approaching Second Street crossing he was looking out along the track ahead of the engine all of the time and saw the automobile as soon as the crossing came into view.

M. L. Williams, fireman on the train, corroborated the testimony of the engineer, stating further that on account of the curve to the southward the engineer could not see Second Street and the automobile until he was about 150 feet from it, and they saw it at about the same time, the witness being on his seat in the engine cab and in approaching Second Street crossing looking out along the track ahead of the engine.

B. Holcombe, conductor on the train, testified that at the time he was busy lifting tickets, and did not pay any attention until he heard the distress signal blown and the emergency brakes put on; that he was inside the air-conditioned coach attending to his duties, and would not notice the bell ringing but knew that it was ringing when the train stopped, and he remembered the engineer blowing for Second Street, being attracted to that by the brakes going on; that from the distance in which the train stopped he judged that the speed of the train was twenty-five or thirty miles an hour at the time of the accident; that there were six cars in the train, and the fourth car stopped on the crossing; that he had had many years of experience in train service, and was familiar with the time it takes to stop trains when everything possible is done, and that in his opinion the train in this case was stopped as quickly as possible after the distress signal was blown and the emergency brakes applied. He further testified that there were no cars on the north track next to Second Street, but he did not know whether or not there were any cars on the south track.

O. R. Miller testified, that as a special officer for the Cedartown Yarn Mills he was watching the door to the premises at the time of the accident; that there was one car on the north track and was located about 165 feet from the street; that his attention was first called to the passenger-train when it blew for Furnace Street about a quarter of a mile away, and his attention was next called to it when the train put on brakes and the whistle began to blow a distress signal; that the bell was ringing at the time, and was ringing from the point of the curve to Second Street, a distance of about 250 feet; that the headlight was burning and the bell ringing all the time; that just about the time the engine was passing him he looked west towards the crossing and saw an automobile standing on the crossing with the front wheels just over the rail.

C. D. Stone, sheriff of Polk County, testified that when the train

struck the plaintiff's automobile he was about 100 yards away; that he heard the train blow for Furnace Street; that the bell was ringing at the time, and continued to ring until the train hit the automobile at Second Street; that it started to blow for Second Street and ended in an emergency signal and was ringing all the time but seemed to stop ringing when the train stopped.

The plaintiff introduced in evidence five photographs showing the Second Street crossing from several positions. The jury returned a verdict in favor of the defendants. The plaintiff moved for new trial on general and special grounds, and the exception is to the judgment overruling the motion.

■ The act of 1918 (Ga. L. 1918, p. 212) regulating the operation of railroads, by which the provisions of sections 2675-2677 of the Code of 1910, known as the "blow-post law" were repealed, imposed certain duties upon the employees of a railway company in the approach of one of its trains to a public railroad crossing, a failure to comply with which constitutes negligence per se. *Seaboard Air-Line Ry. Co.* v. *Benton*, 43 *Ga. App.* 495, 497 (2) (159 S. E. 717). That part of the act in respect to the duty of the employees where a railroad crossing within a municipality is involved is codified (Code, § 94-507) as follows: "Within the corporate limits of cities, towns and villages the said railroad company shall not be required either to erect the blowpost hereinbefore provided for or to blow the whistle of its locomotives in approaching the crossing or public roads in said corporate limits, but in lieu thereof the engineer of each locomotive shall be required to signal the approach of his train to such crossing in said corporate limits by constantly tolling the bell of said locomotive, and on failure to do so the penalties of section 94-9903 shall apply to such offense: Provided further, that nothing in this section contained shall be held to relieve the said engineer or the said railroad company of his or its duty of keeping and maintaining a constant and vigilant lookout along the track ahead of its engine while moving within the corporate limits of said city, town or village, or to excuse such railroad company or such engineer from exercising due care in so controlling the movements of such trains as to avoid doing injury to persons or property which may be on such crossing within said city or within 50 feet of said crossing on the line of such railway, or for failure to observe any ordinance of such city,

town, or village, which may lawfully be passed, regulating the speed at which railroad trains may be run therein."

"The requirement in the Code, § 94-507, of certain duties of a railway company within the limits of a municipality, does not relieve it from doing what ordinary care otherwise requires to be done. In fact it is expressly provided in the Code, § 94-508, that 'The enumeration of certain specific duties as in this law expressed shall in no wise be so construed as to relieve any railroad company from any duty or liability which may be imposed upon it by existing laws.' Again, 'Independently of the provisions of the statute regulating the operation of railroad trains on approaching public crossings, there rests upon the railroad company a duty to exercise ordinary care, and a failure of the servants of a railroad company operating its train to give any signal by bell, whistle, or otherwise, or to check the speed of the train on approaching a public crossing, might, in the opinion of the jury, constitute actual negligence, in the light of the surrounding facts and circumstances.' *Seaboard Air-Line Ry. Co.* v. *Benton,* 43 *Ga. App.* 495, 497 (159 S. E. 717), and cit. This holding was approved in the same case in 175 *Ga.* 491, 493 (165 S. E. 593). 'An act or omission may amount to negligence under the particular facts and circumstances, although there is no statute so declaring. The fact that the law says that the company shall do certain things at a public road crossing does not mean that the dictates of ordinary prudence might not require the doing of the same or similar things at other crossings used by the public with the knowledge or consent of the company.' *W. & A. Railroad* v. *Reed,* 35 *Ga. App.* 538, 540 (134 S. E. 134). 'While specific duties are frequently imposed by statute upon railroad companies with regard to the care which must be exercised at public crossings, they are, even in the absence of specific statutory requirements, bound to exercise reasonable and ordinary care, dependent upon the situation and surroundings of the crossing and the extent of user and commensurate with the danger involved.' 52 C. J. 175, § 1769." *Pollard* v. *Savage,* 55 *Ga. App.* 470, 474 (190 S. E. 423).

It is clearly apparent from the record that the plaintiff did not prove the alleged grounds of negligence noted above, under (b), (c) and (d). His testimony in these respects was merely negative, he stating: "I didn't hear any bell or whistle except a distress sig-

nal which the engineer blew just before striking my car," while the positive testimony for the defendant was that the whistle was blown, not only for the crossing where the accident occurred, but also for another crossing between it and the Cedartown depot; that the bell was ringing from the time the train left the depot; that the engineer and the fireman kept a vigilant lookout along the tracks in approaching the Second Street crossing; that they saw the automobile as soon as it could be seen, and that the train was stopped as soon as practicable thereafter. Was the defendant negligent in running the train at twenty-five to thirty-five miles an hour, as shown by the evidence, without checking it sooner, that is, before the automobile was discovered at a distance of 150 feet away? It is not claimed that the defendant was required by any city ordinance to run at less speed; and whether or not it was negligent, under the facts and circumstances disclosed, in operating the train in the manner shown was for the determination of the jury. Even if the defendant could be said to be negligent in the respect mentioned, the jury would have been authorized to find that the plaintiff by the exercise of ordinary care might have avoided the damage sustained. It is shown by his testimony that he drove his car upon the main line of the railroad and stopped it, although knowing at the moment that the approaching train was within 150 feet of him. He testified that he did not know that he was upon the main-line track until after he stopped the car, although it is stated in the petition that he observed the train at the distance mentioned, and, being already on the main-line track, attempted to speed up the car, and while doing so caused the motor of the car to go dead by reason of the onrush of gasoline. He testified that *after stopping* he discovered that he was on the main track and stepped on the gas to go ahead and "killed" the motor. He is bound by the allegations of his petition, and these may be taken as evidence against him; and where his testimony is in conflict therewith, the jury is authorized to construe the evidence in the way which would be most unfavorable to him. So construed, the evidence would authorize the jury to find that the plaintiff stopped his car on the main-line track at a time when he was aware that the approaching train was only 150 feet away, and to find that this constituted negligence on his part. The plaintiff testified that if he had not stopped the car he could have driven across or backed off the main track and

avoided the accident, and a witness who saw the car on the track testified that in his opinion the car could have been driven from the track in time to avoid being struck, if the motor had been running. The plaintiff testified, however, that the oncoming train excited him; and it is contended in the brief of his counsel that an emergency existed, and that in such circumstances the plaintiff could not be held to the exercise of the care and diligence which would be exercised by an ordinarily prudent person under circumstances where an emergency did not exist. It is well settled that where one creates an emergency he can not avail himself of this doctrine; and it was a question for the jury as to whether or not an emergency existed, and, if so, whether it was caused by the plaintiff. Under the evidence we think that the jury was authorized to find that the proximate cause of the plaintiff's damage was his own negligence, and that by the exercise of ordinary care he could have avoided the consequences of any negligence of which the defendant might have been guilty in the operation of its train, if indeed it could be said that the defendant was in any wise negligent. The court did not err in overruling the general grounds of the motion for new trial.

■ The first special ground complains that the court erred in refusing a request to give to the jury a certain charge. Without setting out the requested charge, it may be said that it contained quotations from two decisions stating a principle of law involving in part the provisions of § 2675 of the Code of 1910 and § 2222 of the Code of 1895, which provisions have since been repealed by the act of 1918 (Ga. L. 1918, p. 212), as shown in the first division of this opinion. Inasmuch as the portion of the requested charge referring to these repealed Code sections was inappropriate and incorrect, it was proper for the court to refuse the entire request. *Grace* v. *McKinney*, 112 *Ga.* 425 (37 S. E. 737); *Thompson* v. *O'Connor*, 115 *Ga.* 120 (5) (41 S. E. 242); *Hardeman* v. *Ellis*, 162 *Ga.* 664 (26) (135 S. E. 195); *Shippey* v. *Owens*, 17 *Ga. App.* 127 (3) (86 S. E. 407).

The second special ground complains that the court erred in charging the jury: "I charge you, . . if the plaintiff recover at all, he must recover for injuries done by some of the acts of negligence set out in the petition. I charge you further in that particular, that if the plaintiff could have avoided the injuries that he

claims to have sustained by the exercise of ordinary care and diligence, or diligence, then he could not recover at all, though the defendants were guilty of some acts of negligence." It is contended that this charge stated the law too strongly in favor of the defendant and was liable to be understood by the jury as instructing them that if the plaintiff was negligent in any particular he could not recover; that it was prejudicial to the plaintiff, because it should have been qualified by stating that if the plaintiff did not use ordinary care and this failure to use ordinary care was the cause of the injury, then he could not recover; that the "effect of the failure on the part of the plaintiff to use ordinary care should have been confined to those things which caused or contributed to the happening which resulted in the injury." The charge as given was substantially in accordance with the rule set forth in the Code, § 105-603, and was not susceptible of the construction placed upon it by movant and was not error for any reason assigned.

The charge to the jury, "that if you find from the evidence that the Seaboard Air-Line Railway Company or its employees were engaged in the operation of the train as it approached the crossing and collided with the plaintiff's automobile, yet if you find also from the evidence that the plaintiff did not exercise ordinary care to discover and avoid the situation that confronted him, he would not be entitled to recover, and you would find for the defendant," stated a correct principle of law, applicable to the issue made in the present case, and was not error for any reason assigned in the third special ground of the motion for new trial. See *Holliday* v. *Athens*, 10 *Ga. App.* 709 (4) (74 S. E. 67) ; *Moore* v. *Seaboard Air-Line Railway Co.*, 30 *Ga. App.* 466 (9, 10) (118 S. E. 471).

Ground 4 complains that the court erred in charging the jury: "If, after the discovery of a dangerous situation in which the plaintiff might have found himself, if the defendant could have avoided the injury by the exercise of ordinary care and diligence, notwithstanding the negligence of the plaintiff, the defendant would in that event be liable. If the plaintiff could have avoided the injury to his property by the exercise of ordinary care and diligence, then he would not be entitled to recover." It is contended that the charge failed to place upon the defendant the duty of operating its train at a rate of speed such as to avoid striking the plaintiff's car at the crossing, did not charge in connection therewith the law

relating to the duties of the plaintiff after finding himself in the dangerous situation, and stated that regardless of the negligence of the defendant at the time of the damage it was relieved of liability if unable to stop the train, and the charge failed to limit the exercise of ordinary care to any particular time. The court had already charged the jury immediately before the portion to which objection is made, that "The defendant owes to the plaintiff the duty of ordinary care and diligence at all times to protect him from injury. The plaintiff owes the defendant ordinary care and diligence not to place himself in a situation where damage might result to him." The portion of the charge excepted to was not error for any reason assigned.

The charge that "If you believe the defendant company was negligent to some extent, and you further believe that the plaintiff was negligent to an equal or greater extent, the plaintiff can not recover in this case, and your verdict should be for the defendant," stated a correct principle of law applicable to the issue in the case, and was not error for any reason assigned in ground 5. *Pickett* v. *Central of Georgia Railway Co.*, 138 *Ga.* 177 (3) (74 S. E. 1027), and cit.; *Central of Georgia Ry. Co.* v. *Burton*, 33 *Ga. App.* 199 (3) (125 S. E. 868).

Ground 6 of the motion for new trial complains that the court erred in charging the jury that "If the plaintiff could have avoided the injury to his property by the exercise of ordinary care and diligence, then he would not be entitled to recover," and "in conjunction therewith" charging: "If you find that both the plaintiff and the defendant were, under the rules of law given you, guilty of some degree of negligence, then you would look to see which contributed the more to the injury and damage done, and then you would lower the damage, if you found the defendant's negligence exceeded that of the plaintiff in that comparison." It is contended that, given in connection with each other, the two portions were confusing and misleading, and that there is no explanation as to either, the first not limiting the act of negligence to any particular time, and the second misleading the jury as to calculating the amount of damages in a comparison of respective negligence of the parties. The first-quoted portion of the charge was not given "in conjunction with" the second portion, and as given stated a correct principle of law applicable to the issue in the present case. The

second portion, while not as clear as it might have been, was not harmful to the plaintiff, inasmuch as the jury found against the plaintiff's right to recover in any amount. *Owens* v. *Fuller*, 27 *Ga. App.* 368 (4) (108 S. E. 312) ; *Smallwood* v. *Pollard*, 54 *Ga. App.* 617, 618 (5) (188 S. E. 594).

Ground 7 complains that the court erred in charging the jury as follows: "I am requested to charge by the defendant company that the law imposes on the plaintiff the duty of exercising ordinary care to protect himself and his property; and ordinary care, as applied to him, means just that care that every prudent person should have exercised under the same or similar circumstances, and the failure to exercise such care on his part would constitute negligence." It is contended that this charge intimated an opinion by the court as to what constituted negligence, and was as to a matter of fact which should have been left to the jury for determination, and was argumentative in form; that it charged the jury that the act of going upon the crossing without exercising the care therein stated would constitute negligence; and that it was injurious to the plaintiff, for the reason that the court stated that the charge was being made at the request of the defendant, and was for that reason prejudicial. Where a requested charge is legal and applicable, it is proper for the court to give it to the jury, and it is not prejudicial as to one party merely because the request is made by the other party and the court incidentally so states. Nor was the charge objected to subject to the criticism that it intimated an opinion by the court "as to what constituted negligence," etc. See *Metropolitan Railroad Co.* v. *Johnson*, 90 *Ga.* 500 (5) (16 S. E. 49), where it was held: "A request in this case to charge that 'the precise thing which every person is bound to do before stepping upon a railroad track, is that which every prudent man would do under like circumstances. If prudent men would look and listen, so must every one else, or take the consequences so far as the consequences might have been avoided by that means,' was legal and applicable, and should have been complied with." The charge was not error for any reason assigned.

The court charged the jury: "If you believe from the evidence that the plaintiff's own negligence, if you find that he was negligent, was the proximate cause of his damage, then in no event could he recover, though you might also find that the defendant

and its agents and employees were likewise guilty of negligence." The plaintiff admits that the charge was a correct statement of law, but in ground 8 of the motion for new trial complains that the court erred in not charging, in connection therewith, "the principle of law which had been requested in writing," etc. (dealt with in the first division of this opinion), and was injurious to the plaintiff in failing to explain the meaning of proximate cause in connection with this portion of the charge. "It is not a good ground of criticism upon a portion of the court's charge to say that some other principle of law involved under the facts of the case should have been given in the charge. If the court omits to charge the law applicable to the material issues of the case, that should be made a distinct ground of the motion for a new trial, in order to avail the plaintiff in error." *Green* v. *State,* 150 *Ga.* 121 (102 S. E. 832). In the absence of a written request, the court did not err in failing to define proximate cause. The charge complained of was not error for any reason assigned.

The charge, "You gentlemen have the right to draw upon the composite wisdom and knowledge, experience and observation of the twelve men constituting the jury. In other words, you are expected to use your common sense in reconciling the evidence, in fitting the evidence to the law, and in reaching a verdict. You must use your knowledge of mechanics, of the rapidity with which trains, locomotives, and automobiles travel and can be stopped, your common knowledge. That is the reason you are chosen, because of your superior intelligence and integrity, and that means that you should use your judgment. You should disregard the comments of counsel with reference to each other. Sometimes a lawyer has something in his system that he must get out or bust, but it is not evidence and should have no weight or influence on your minds in reaching your verdict," was not error for the reason assigned in ground 9, in effect, that it authorized the jury to act upon their private knowledge and opinions as individuals as to facts in issue, and that it was argumentative. The charge was not error for any reason assigned. See, as to the jury applying to evidence their common sense, knowledge, and experience, *Broyles* v. *Prisock,* 97 *Ga.* 643 (6) (25 S. E. 389) ; *Lowry* v. *Lowry,* 170 *Ga.* 349, 356 (11) (153 S. E. 11) ; *Wallace* v. *Howard,* 58 *Ga. App.* 428 (198 S. E. 812).

Ground 10 complains that the court erred in charging the jury

"that railroad trains must always run at a reasonable and safe rate of speed, and that rate of speed is determined by the conditions surrounding the place where the travel is being carried on and the general situation, a reasonable rate of speed," it being contended that this was erroneous in that it was given "in answer to an oral request to charge the crossing law in cities and populous communities," and "failed to fulfill the purpose of that section," for reasons named, and "violates the common sense of that statute, in that it does not state the true principle of that law" in respects named. The charge was not harmful to the plaintiff, and was not error for any reason assigned. It is not shown that any written request to charge as contended for was made. Error is not assigned upon the failure to give such charge. "A correct statement of law embraced in a charge to the jury is not erroneous because the court failed in the same connection to give to the jury other appropriate instructions." *Chandler* v. *State,* 54 *Ga. App.* 334 (2) (187 S. E. 856) and cit.; *Lucas* v. *State,* 110 *Ga.* 756 (1) (36 S. E. 87). "If counsel desired any particular principle of law to be given in charge, they should have submitted to the court an appropriate request in writing. Or, if the principle in question was one necessarily involved in the trial, they ought, independently of other matters, to have excepted to the failure of the judge, even though not so requested, to charge the jury thereon." *McIver* v. *Georgia Southern Ry. Co.,* 108 *Ga.* 306, 309 (33 S. E. 901).

Ground 11, complaining that the court failed to charge the doctrine of "last clear chance" to avoid, is without merit, it appearing from the record that the court did so charge as follows: "If after the discovery of a dangerous situation in which the plaintiff might have found himself, if the defendant could have avoided the injury by the exercise of ordinary care and diligence, notwithstanding the negligence of the plaintiff, the defendant would in that event be liable."

In ground 12 complaint is made that the court failed to state certain contentions of the plaintiff's petition. The court substantially outlined the plaintiff's contentions, and stated: "You will have out with you the petition of the plaintiff and the answer of the defendant. These papers are not evidence in any sense of the word, but are given to you so as to give you an idea of just what each side claims, and it is your duty to find the issue one way or the

other." If a more detailed statement was desired, the plaintiff should have made proper request of the court. *Bridges* v. *Ramsey Sign Service Co., 50 Ga. App.* 583 (4) (179 S. E. 404). Complaint is made that in the use of certain words, in connection with stating the contentions of the plaintiff, the court in fact misstated the contentions of the plaintiff and disparaged and prejudiced his cause, and that the charge was argumentative. Without entering into a detailed discussion, it is deemed sufficient to say that this ground has been carefully considered, and that it does not require a reversal for any reason assigned.

*Judgment affirmed. Felton, J., concurs. Stephens, P. J., dissents.*

STEPHENS, P. J., dissenting. I am of the opinion that the charge excepted to in the third ground of the amendment to the motion for new trial was error upon the ground that it in effect instructed the jury that if the plaintiff was negligent in going upon the railroad-track, or was negligent in not discovering the approach of the train before going upon the track, he could not recover, notwithstanding his negligence in going upon the track and in failing to discover the approach of the train may not have been the proximate cause of his injury. The charge was in the following language: "If you find also from the evidence that the plaintiff did not exercise ordinary care to discover and avoid the situation that confronted him, he would not be entitled to recover, and you would find for the defendant." The effect of the plaintiff's exception to this charge was that it erroneously instructed the jury that if the plaintiff was negligent, as stated in the charge, he could not recover, notwithstanding the defendant may have been negligent. This necessarily means that the plaintiff could not recover if he was negligent, notwithstanding his negligence may not have been the proximate cause of the injury. The charge excepted to clearly eliminated, as essential to the bar of plaintiff's right to recover as the result of his own negligence, the fact that such negligence must be the proximate cause of the plaintiff's injury. The plaintiff could have been negligent in going upon the track and creating the dangerous situation that arose after he went upon the track, and yet be entitled to recover if the negligence of the defendant was the proximate cause of plaintiff's injury. Plaintiff's negligence in going upon the track was not necessarily the proximate cause of his injury.

It appears from the evidence that after the plaintiff had driven his car upon the railroad-track, and after the motor had stalled and he had attempted to start the car, he had time after observing the approach of the train to get out of the car and to undertake to push it off the track. The engineer had considerable time within which to observe the plaintiff's situation upon the railroad-track. It is therefore inferable from the evidence that the engineer could, in the exercise of ordinary care in the operation of the train, have avoided running into the automobile of the plaintiff, notwithstanding the plaintiff may have been negligent in going upon the railroad-track and creating "the situation that confronted him." This being the case, it can not be said that the plaintiff's negligence as a matter of law barred a recovery. The effect of the charge, as has been stated, was an instruction to the jury that if the plaintiff was negligent his negligence barred a recovery. While the able trial judge did not intend to so instruct the jury, yet the import of his language was to that effect, and it must have been so understood by the jury. The charge of the court which instructed the jury as a matter of law that such negligence would bar a recovery was an erroneous statement of the law, was prejudicial to the plaintiff, and demands the grant of a new trial. I dissent from the conclusion expressed in the majority opinion that this charge was not error for any reason assigned. I concur in all other rulings. I am of the opinion that the court erred in not granting the plaintiff a new trial, and therefore I dissent from the judgment of affirmance.