31341.   FORTSON *v.* CAUDELL.

DECIDED SEPTEMBER 27, 1946.

*Joseph E. Webb, P. J. Smith,* for plaintiff in error.

*J. T. Murray,* contra.

Sutton, P. J. (After stating the foregoing facts.) ■ It was admitted by both the applicant and the protestant that the disputed line started at a certain poplar tree and ran from this poplar tree to a corner on Bluestone Creek. The applicant contended that the line run by the processioners, which line started at the poplar tree and ran thence North 13 1/4 degrees East 1462 feet to a beech on the creek, was the true dividing line; while the protestant contended the true line between the lands of these parties began at the poplar tree and ran thence North 17 1/4 degrees East 1425 feet to a sweet gum on the creek. It appeared from the evidence that the lands owned by both the applicant and the protestant had formerly belonged to B. A. Fortson, who, on January 1, 1920, conveyed the tract now owned by the applicant to S. J. Carmichael & Company.

On December 13, 1919, some two weeks before B. A. Fortson made the deed to Carmichael & Company, Fortson had the Carmichael tract of land surveyed by E. E. Stone, who made a plat of same and the plat was attached to the deed to Carmichael & Company. In that deed and plat, the line now in dispute was described as running from the poplar tree (which is still there and recognized by both applicant and protestant as the corner between these lands) North 12 degrees East 22.15 chains to a stake on Bluestone Creek. The applicant, Caudell, holds under deeds from successors in title of S. J. Carmichael & Company; while the protestant holds under a later deed from his sister, Mrs. Love, who inherited the land from her father, B. A. Fortson, at his death some two years after he had deeded the other adjoining tract to Carmichael & Company.

The protestant contended that the line run by the processioners went several feet from a hedgerow or turnrow and ditch, which

ran between the lands of applicant and protestant, while the applicant contended that the processioners followed the hedgerow and that they ran and established the line described in the old deed from B. A. Fortson to Carmichael & Company and in the plat and survey made by E. E. Stone, on December 13, 1919, which plat was attached to the Carmichael & Company deed. The surveyor testified in part: "I ran that line according to this plat which has been introduced in evidence made by Mr. Stone in 1919 and the deed accompanying that plat; I followed the deed that was submitted to me that day. The course in that deed and plat called for North 12 degrees East 22.15 chains. I ran this disputed line from that poplar a course of 13 1/4 East 1462 feet, and that accounted for the difference in the old course of North 12 degrees East, that being the difference in the variation of the magnetic compass. According to my understanding that is substantially correct. That is as close as surveyors usually figure. In other words, if that line was run in 1919 North 12 degrees East at that time, today, by running North 13 1/4 degrees East, you have the same line. That is my understanding, twenty-six years, and you increase a degree for every twenty years, and with twenty-six years it would be a degree and a quarter as near as we can figure it."

While the protestant testified that the line run by the processioners did not follow the hedgerow, the surveyor testified that he followed very close to the turnrow as far as it went (it only extended about 100 yards from the poplar to the edge of the woods), and one of the processioners testified that the line marked by them "went down this hedge in running the line we established there . . and hit the creek near a beech tree" while the other processioners testified the line was "right on the edge" of the turnrow. It did not appear that there were any marked trees between the end of the hedgerow and the creek, but it did appear from the evidence that the timber through the woods, from the end of the hedgerow at the end of the field to the terminus of the line at the creek had been burned over after the first survey of the line now in dispute was made in 1919, and the old timber was all down.

The line between the lands of the applicant and protestant was in dispute, and the processioners and surveyor were called out to arrive at the true dividing line, and to trace and mark the same. It was not a question of running a new line, but was for the pur-

pose of retracing a line, which the evidence shows was surveyed by E. E. Stone on December 13, 1919, and his survey was evidenced by a plat made by him at that time and the plat was attached to the deed made by B. A. Fortson to Carmichael & Company, the applicant' being a successor in title under that deed. The poplar tree was recognized by the applicant and protestant as the correct corner between their lands and they both also conceded that the hedgerow or turnrow from the poplar to the edge of the woods was along or on the line. There were no other recognized marks. Code, § 85-1601, under the chapter of processioning land lines, provides: "In all cases of disputed lines the following rules shall be respected and followed: Natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks, such as corner station or marked trees, shall control the course and distances called for by the survey. If the corners are established, and the lines not marked, a straight line, as required by the plat, shall be run, but an established marked line, though crooked, shall not be overruled; courses and distances shall be resorted to in the absence of higher evidence." Section 85-1606 provides, in part: "It shall be the duty of the county surveyor, with the processioners, taking all due precaution to arrive at the true lines, to trace out and plainly mark the same." The processioners and surveyor had a genuine landmark, the marked poplar tree, as a beginning point, and then the hedgerow, and the course and distance in the old deed and plat to go by and to aid them in arriving at the true line between the parties. The line established by the processioners and surveyor commenced at the poplar tree, the undisputed corner, and ran thence North 13 1/4 degrees East 1462 feet to a stake or beech tree on Bluestone Creek. This course and this distance corresponded with and were the same as those designated and set out in the E. E. Stone plat and the deed from B. A. Fortson to Carmichael & Company. That line was surveyed and marked in December, 1919, some twenty-six years before the processioners and surveyor retraced and marked it in June, 1945, according to the evidence. There is an increase or variation in the magnetic needle on the compass of one degree for each twenty years, or 1 1/4 degrees for twenty-six years, which when added to the bearing of North 12 degrees East makes the 13 1/4 degrees; and the

distance of 1462 feet is the same as 22.15 chains, there being 66 feet in a chain.

The protestant contended the line ran from the poplar tree North 17 1/4 degrees East a distance of 1425 feet to the creek, which neither corresponded in course nor distance with the line designated in the E. E. Stone plat and the B. A. Fortson deed to Carmichael & Company. I think the processioners and surveyor observed the rules and followed the law applicable to processioning in cases of disputed land lines. There were some conflicts in the evidence, but the jury was authorized to find that the processioners and surveyor retraced and marked a line that was run between the Carmichael tract, now owned by Caudell, and the Fortson tract, about twenty-six years before. The court did not err in overruling the general grounds of the motion for a new trial.

■ In special ground 1 of the amended motion for a new trial, the plaintiff in error contends the court did not fairly state his contentions to the jury in that the court left out entirely from his statement of the contentions of the plaintiff in error that he contended that he had had actual possession of the land in dispute for more than seven years under a claim of right. There is no merit in this ground of the amended motion. The court instructed the jury that they were to determine the issues raised by the protest to the return of the processioners and that the protestant contended that the line marked by the processioners was not the true line, but that the true line was "one beginning at a poplar and is a straight line running thence North 17 1/4 degrees East 1425 feet to a sweet gum on Bluestone Creek." The issue between the parties was raised by the protest to the return of the processioners, and was whether the line surveyed and marked by the processioners was in fact the true line between the parties or whether the line set up in the protest was the true line. With reference to possession of the protestant for seven years establishing the boundary line between him and the applicant, the court instructed the jury that "acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." The court in his charge substantially outlined the contentions of the plaintiff in error and if a more elaborate or detailed statement of his contentions was desired, he should have made a proper written request for the same. *Thompson v. Powell*, 60 *Ga. App.* 796, 809

(5 S. E. 2d, 260); *Rogers* v. *Rogers,* 65 *Ga. App.* 806, 808 (16 S. E. 2d, 490); *Bridges* v. *Ramsey Sign Service Co.,* 50 *Ga. App.* 583 (179 S. E. 404). In the absence of a written request, the court did not err in failing to charge more specifically on the contentions of the protestant; and did not err in overruling special ground 1 of the motion for a new trial.

In special ground 2 of the motion, error is assigned on the following charge: "Now, gentlemen, there is no adverse possession in this case; I don't believe any is claimed. If there is it is in reference to a certain line, at the beginning, a ditch line, or a drain line, or a hedgerow; you have heard them discussed—I am not saying what the evidence was—and they worked up to it. If they acquiesced in a line, of course, that is the boundary line, whatever you find it to be." It does not appear that this charge was harmful to the protestant. The evidence was undisputed that the boundary line between the lands of these parties, from the end of the ditch or hedgerow to the creek, ran through woods where there was a growth of small timber. The only portion of the line in which adverse possession or the establishment of a dividing line by acquiescence of the parties could have been involved, under the evidence, was that portion of the line running from the poplar tree and ending at the edge of the woods, a distance of about 100 yards, and the court expressly instructed the jury, that if the parties acquiesced in a dividing line, that would be the line between them and that "acquiescence for seven years, by acts or declarations of adjoining landowners, shall establish a dividing line." Moreover, the evidence was that the dividing line marked by the processioners ran along the edge of the hedgerow from the poplar to the edge of the woods. It was admitted by both applicant and protestant that the hedgerow or ditch running from the poplar tree corner to the edge of the woods was the line between their lands. So, the issue between the parties as to this portion of the line was not of adverse possession or the establishment of a line by acquiescence for seven years, but merely one of fact as to whether or not the line established by the processioners ran along the ditch or hedgerow. The jury found, on conflicting evidence, that the line established by the processioners did run along the ditch or hedgerow. The charge was not reversible error for any reason

assigned, and the court did not err in overruling special ground 2 of the motion for a new trial.

■ The verdict of the jury is supported by evidence and has the approval of the trial judge and, no error of law appearing, it will not be disturbed by this court.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Broyles, C. J., Sutton, P. J., Gardner and Parker, JJ., concur. MacIntyre, J., concurs specially. Felton, J., dissents.*

MacIntyre, J., concurring specially. 1. B. A. Fortson owned a certain tract of land. In 1919 he sold off a portion to the applicant Caudell's predecessor in title. S. M. Fortson, the protestant, is the son of B. A. Fortson, and later obtained title to a part of his father's land which adjoined the tract previously sold to Caudell's predecessor in title, and a line between these two tracts of land is in dispute here. I think that a finding was authorized by the evidence that when Caudell's predecessor in title bought the property in question from the elder Fortson in 1919, that a surveyor by the name of Stone ran the line which bounded the Caudell tract which was being cut off and sold by the elder Fortson; that Stone, the surveyor made a plat of the Caudell tract; that Stone ran the line in question from a point which was marked by a poplar tree to a point on the creek which was marked as a corner by a stake; that between these two points, beginning at the poplar tree, Stone ran a straight line North 13 1/2 degrees East for a distance of 1462 feet to a stake; that a plat was made by such surveyor evidencing this fact, and the description in the deed to the Caudell tract was made a few days later and followed the description of the surveyor, Stone, as shown by his plat; that when the processioners here went to mark anew the disputed line they did not find such stake on the corner at the creek; and that the plat made by Stone said that relative to the poplar tree the corner stake on the creek had been at a certain point which the plat designated.

I think that if the stake had rotted away or had been removed and was no longer at the point where Stone by his plat said it marked this corner on the creek, that the processioners could, by

following the written instructions of the surveyor, Stone, which were given in the form of his plat, establish the point where Stone by his plat said the stake was when he ran the line to the Caudell tract, and thus establish the corner on the creek and mark it anew by putting up another stake or otherwise marking it, and then run a straight line between these two corners (in the absence of proof of acquiescence, adverse actual possession, etc.). The processioners were authorized to find that the turnrow (variously called a hedge or ditch) ran practically along this line as far as it went (about 100 yards), and had been acquiesced in for over seven years by both parties as being the line between the two tracts of land. While reference was made to the return of the processioners to the courses and distances in the deed and in the Stone plat, I interpret the processioners return as in effect saying that the line they marked anew was the same line which Stone had marked in 1919. I therefore think that the processioners were not running a new line, but were marking anew the old original line marked by Stone.

■ The judge's charge with reference to acquiescence, in the absence of a written request, was not cause for reversal.

■ I do not think there was evidence authorizing a charge on actual adverse possession. I therefore think this case should be affirmed.

FELTON, J., dissenting. The evidence shows without dispute that in ascertaining the line in this case the processioners laid out a line described in a deed and plat attached. They did not lay out a line from physical marks on the face of the earth and mark anew an old line once physically established. The surveyor testified: "I ran the line according to this plat which has been introduced in evidence made by Mr. Stone in 1919 and the deed accompanying the plat; I followed the deed that was submitted to me that day." Both parties agreed on one corner which had been marked and in the past the line described in the deed and plat above referred to had been laid off and marked at one end by a stake and at one end by a tree, and the line run by the processioners ran close to a ditch and a hedgerow which ran for a short distance and which it was conceded was the true line for that distance. At the time of the processioning the stake formerly put down was gone and was not found and no one testified as to where it had been except from the survey. The law is, as I understand it, that pro-

cessioners can not lay out a line as they think it ought to be from a deed or plat, but that it must be an old line, physically established by more than one mark. A line can not be established by one physical mark. What seems to me to confuse the majority is that a stake was once at the other end of the line from the tree, the agreed starting point. I agree that if the location of the old stake had been shown by evidence outside of the deed and plat the line run would have been authorized, but with the stake gone, the processioners did the same thing they would have done if the line had never been surveyed before and no plat made. In either event they would have been putting the line where they thought it should be. It was stated by Judge Jenkins in *Cosby* v. *Reid*, 21 *Ga. App.* 604-5 (94 S. E. 824) that "muniments of title accompanied by diagrams or plats which might on paper sufficiently describe and designate the lines and boundaries of realty so as to render their ascertainment certain will not of themselves afford the proper basis for the services of processioners." He goes on further to say that if there are a sufficient number of landmarks established physically the line could be ascertained by connecting them or projecting them by the courses and distances on the plat. Nothing like that was done in this case. The ditch and hedgerow was not established as a part of the line because of a finding that it was physically marked as a part of the line, and the rest of the line was not projected from it. The evidence is that the line was run from the *plat* and it was a coincidence that a part of such a line ran close to the ditch and hedgerow. The protestant swore that the line was close to the hedgerow at the beginning but got farther and farther away so that at the end of the line it was many feet off of the line of the ditch and hedgerow. The case of *Booker* v. *Booker*, 41 *Ga. App.* 380 (153 S. E. 94), may be distinguishable on the record of the evidence which is not set out in detail. In support of the foregoing views see the cases cited in *Smith* v. *Clemons*, 71 *Ga. App.* 589 (31 S. E. 2d, 621). In view of the fact that the processioners found a line in a manner not authorized the court should have dismissed the proceeding.