THE RICHMOND & DANVILLE RAILROAD CO. *v.* MITCHELL.

1. In the trial of an action for a tort committed in another State, the rules of evidence applicable to a tort of like class committed in this State are to be administered, whether the rules of evidence in the other State be the same as in this or not.

2. So far as appears, the degree of diligence due respectively between employer and employee under the laws of Alabama is not more than ordinary diligence.   Ordinary diligence is that care which every prudent man exercises under the same or similar circumstances.

3. Inasmuch as the plaintiff below, when he undertook to make the coupling, knew that the supply of hands ordinarily requisite to the occasion was deficient, and nevertheless consented without objection to make the coupling, and inasmuch as the mode of making it and the care and  diligence to be exercised would in no way, after the plaintiff engaged in the work, be affected by the want of more hands, the deficiency was irrelevant to the issue on trial, and it was error to give in charge to the jury anything whatever on that subject.

4. A written or printed rule, carefully prepared, which prohibits brakemen " from coupling or uncoupling cars except with a stick," and declares that "brakemen or others must not go between the cars under any circumstances for the purpose of coupling or uncoupling, or adjusting pins, etc., when an engine is attached to such cars or train," does not apply to a case in which the engine was not attached to any car or train and in which the brakeman stationed himself, in the way usually practiced by employees, upon the foot-board of the pilot on the tender, and while there attempted to withdraw with his hands, without using a stick, a pin and link from the coupling apparatus of the engine, the engine and tender moving backwards at the time towards a standing car in the rear, for the purpose of being coupled thereto.

5. It is error for the court to assume that there is a conflict in the evidence when there is none, and to charge the jury on that subject, even though such charge be connected with relevant and

| 92 | 77 |
| 92 | 493 |
| 92 | 77 |
| s95 | 79 |
| 92 | 77 |
| 97 | 707 |
| 92 | 77 |
| 106 | 577 |
| 92 | 77 |
| 120 | 94 |
| 92 | 77 |
| f123 | 764 |
| 92 | 77 |
| 124 | 683 |
| 92 | 77 |
| 129 | 415 |

correct propositions of law applicable to the case. This ruling applies to the eighth ground of the motion for a new trial.

6. In view of the evidence and the true law applicable thereto, there was no error in refusing any of the requests to charge the jury, made by counsel for the company.

May 15, 1893.

Action for damages. Before Judge WESTMORELAND. City court of Atlanta. June term, 1892.

Mitchell obtained a verdict against the railroad company for injuries received by him while in its service in Alabama. The company's motion for a new trial was overruled. The motion alleges that the court erred in charging the jury thus:

1, 2. "To make a *prima facie* case for a recovery, the plaintiff must prove either that he was not at fault or negligent or that the company was, and the company may successfully defend by showing that the plaintiff was at fault or negligent, or that it was not to blame. Without fault means that the plaintiff must not have done anything that contributed to his injury, or must have done everything he could have done, in the exercise of ordinary diligence, to prevent the consequence of the company's negligence. In other words, he must show that he did nothing he ought not to have done, and neglected to do nothing he ought to have done in the exercise of ordinary diligence. The rule of diligence to be exercised is ordinary diligence. The company owed the plaintiff ordinary diligence, and he owed to the company the same degree of diligence. Ordinary diligence is that care which every prudent man takes under the same or similar circumstances."

3. "It is also the duty of the defendant to furnish a reasonable number of hands to make the work reasonably safe, and if the defendant failed to furnish a reasonable number of hands, and the plaintiff was injured on that account, and the fact that they failed to furnish a reasonable number of hands was not known to the plain-

tiff, and could not have been known by him by the exercise of ordinary diligence, and he was hurt on that account, and without fault on his part, he would have a right to recover. If, however, you find from the evidence in the case that the defendant failed to furnish a sufficient number of hands and also failed to keep its appliances and track in a reasonable and safe condition, but they did not cause the injury or contribute to it, the plaintiff cannot recover.

4–6. Other grounds of the motion are, that the court erred in refusing to charge as follows: "A custom or usage cannot vary or contradict the express terms of a written contract. Under the terms of the contract signed by plaintiff, and introduced in evidence by defendant in this case, if said contract was in force at the time when plaintiff received the injury complained of in this case, the plaintiff would have no right to recover from the defendant, if at the time he received the injury he was violating the terms of the contract. I further charge you, that if plaintiff, while making preparations to couple an engine to a train of freight-cars that were standing upon the same track with the engine, signalled the engine back in the direction of the cars, without any instructions so to do, got upon the pilot of the tender, thereby placing himself between the engine and the cars that were to be attached to the engine, and while standing upon the pilot was thrown therefrom and injured, he is not entitled to recover from the defendant for such injury. In this case the burden of proof is upon the plaintiff to show that he himself did not do an act, or did not put himself in a perilous situation, which contributed naturally and proximately to the injury which he received; and if he fails to show this, either by his own evidence or that of defendant, he cannot recover. If there was a defect in the track of the defendant, or the road-bed of the defendant, which was patent and

could have been seen by him, the law charges him with knowledge of that defect; and if such defect was the cause of his injury, because he voluntarily went upon the road-bed, he would thereby be barred from a recovery caused by such a defect."

For the other facts see the decision.

JACKSON, LEFTWICH & BLACK and EMMETT WOMACK, for plaintiff in error. GLENN & SLATON, *contra.*

BLECKLEY, Chief Justice.

1. Touching the evidence requisite to make a *prima facie* case in behalf of the plaintiff below, the court gave in charge to the jury the rule of law applicable in this State between the parties where the action is against a railroad company for a personal injury sustained by one of its employees in consequence of the negligence of the company or of a co-employee. This was correct although the injury sued for was sustained in the State of Alabama. The quantity or degree of evidence requisite to sustain an action or to change the burden of proof is determined by the law of the *forum* and not by the law of the place where the cause of action arose. It belongs not to the law of rights but to the law of remedy. It is matter of procedure and practice, or of the law of evidence in its relations thereto. What evidence and how much will suffice for verifying in the courts of this State a right to recover in a given action or class of actions, is determined by the laws of this State and them alone. These courts often have to look elsewhere for the law of rights, but they never look elsewhere for the law of remedies or for any part of the same. A tort committed in Alabama is proved here just as the same class of torts, when committed here, are proved. The same presumptions prevail, and the same measure and degree of evidence will shift the burden of proof from the plaintiff to the defendant.

2. The court instructed the jury that the degree of diligence to which the plaintiff was entitled while engaged in the service of the railway company while in Alabama, was ordinary diligence, and that the company was entitled to a like degree from him. Nothing appears, either as matter of law or evidence, tending to show that in that State any higher degree is due from either to the other. In defining ordinary diligence the court said it is that care which every prudent man exercises under the same or similar circumstances. This was correct.

3. The charge of the court touching a deficiency in the supply of hands was irrelevant to the issue and to the facts in evidence. When the plaintiff undertook to make the coupling he knew that the supply of hands ordinarily requisite to the service was deficient. With this knowledge and without objection he consented to make the coupling. No change in the supply occurred between that time and the time of his injury. He has no right now to blame the company or to excuse himself on account of any deficiency in the supply, of which he had knowledge when he consented to make that particular coupling and engaged in the work of making it. The mode of making it and the care and diligence to be exercised by him underwent no variation in consequence of anything that happened after he consented to make it. If the number of hands on whose co-operation he relied, or had a right to rely, had been diminished without his knowledge after that consent was given, he would have had a right to complain. But as nothing of the sort occurred, his duty was to make the coupling in a proper manner if he could, and if he could not, to leave it unmade. He certainly had no reason to think that the company desired him to do anything which could not be done in the usual manner and by the exercise of ordinary diligence on his part. The evidence that he

consented to make the coupling is found in the fact that, without objection, he undertook to make it, and was injured in the attempt. If some one else ought to have been present to do the work or aid in doing it, and he meant to make that an excuse for not succeeding in it, in the event he failed, he ought to have made that an excuse for not trying to do it, and should have forborne the attempt.

4. As part of his contract of employment with the company the plaintiff subscribed to an instrument of writing declaring as follows: "I fully understand that the rules of the Richmond & Danville Railroad Company positively prohibit brakemen from coupling or uncoupling cars, except with a stick, and that brakemen or others must not go between the cars, under any circumstances, for the purpose of coupling or uncoupling or adjusting pins, &c., when an engine is attached to said cars or train; and in consideration of being employed by said company, I hereby agree to be bound by such rule, and waive all or any liability of said company to me for any results of disobedience or infraction thereof. I have read the above carefully and fully understand it." It may be fairly presumed that the rules referred to and quoted from in the contract were carefully prepared, deliberately adopted and embodied in some written or printed document. It is allowable, therefore, to notice the phraseology critically in order to ascertain whether or not, fairly construed, that phraseology embraces such a coupling as was attempted in this case. The plaintiff was neither coupling nor uncoupling cars, nor did he go between the cars, nor was the engine attached to any cars or train. The evidence is, in substance, that the plaintiff, who was a brakeman, stationed himself, in the way usually practiced by employees, upon the foot-board of the pilot on the tender, and while there attempted to withdraw with his hand, without using a stick, a pin

and link from the coupling apparatus of the engine, the engine and tender being in motion backwards at the time towards a standing car in the rear, for the purpose of being coupled thereto.   Certainly the rules as quoted do not, by their letter, cover such a transaction as that in which the plaintiff was engaged.   It is said, however, that they do cover it in spirit and intention.   This seems to be altogether too doubtful, for, as we have already said, there is a presumption that such rules would be carefully considered and accurately expressed, and we may add that they ought to be construed more strongly against the party who made and adopted them than against one who merely assented to and agreed to be bound by them when they were presented to him as a basis of contract.   The strong probability is that in preparing the rules such a case as the present, though it might frequently occur, was overlooked, and therefore was not provided for.   We think this is the truth of the matter, and we hold with confidence that the rules have no application to the present case.

5. In charging the jury as set out in the 8th ground of the motion for a new trial, the court assumed that by possibility the jury might find a conflict in the evidence, the language of the charge being : " and if you find from the evidence in this case that there is a conflict between the plaintiff and the defendant on any material issue in the case, and you should find that there is a witness or witnesses accessible whose evidence would throw light upon that issue, and that witness or those witnesses were not introduced or accounted for, that circumstance may be considered by you in passing upon that issue; and this rule of law is applicable to both plaintiff and defendant in this case."   We have scrutinized the evidence very carefully, and there is no conflict in it on any material issue, and no charge upon the subject was appropriate.   No harm would have been done by

an instruction merely to reconcile conflicts in the evidence if any existed, and if the jury could reconcile them, but to put the jury on the lookout for other witnesses, witnesses not introduced or accounted for, was rather a dangerous thing; and every one knows to which of the parties it was dangerous. It is true that this irrelevant charge was connected with and immediately followed certain relevant and correct propositions of law applicable to the case, but they were not on this same subject. And this being so, the fusing of them with this in the same ground of the motion for a new trial, and without pointing out wherein the error consists, will not constrain this court to pretermit the whole ground, more especially where there is to be a new trial on account of another error which the trial court committed.

6. We have read and considered the requests to charge the jury, made by counsel for the company, and no error is discoverable in the refusal of the court to charge as requested. But the court erred in not granting a new trial.                   *Judgment reversed.*