27977. REID *v.* SINCLAIR REFINING COMPANY.

DECIDED MARCH 15, 1940.   REHEARING DENIED MARCH 30, 1940.

*Edwards & Edwards,* for plaintiff.

*C. W. Brannon, Walter Matthews, D. B. Howe, H. P. Ragland,* for defendant.

MacINTYRE, J.   Generally speaking, when a judgment is affirmed the case is ended; but when a new trial is granted, the judgment of the appellate court, granting a new trial, in effect reaches back to the point where the first error complained of was made. A new trial in this case meant a re-examination of the issues of fact in the same court where it was formerly tried.   Black's Law Dictionary, 1755; 9 Michie's Dig. Ga. R., 578; 2 Pope's Legal Definitions, 1065.   There was no demurrer in this case on the former trial.   When a motion for new trial was granted by this court (*Sinclair Refining Co.* v. *Reid,* 60 *Ga. App.* 119, 3 S. E. 2d, 121), on the ground that the finding of fact by the jury in their verdict was erroneous, such ruling reached back to the point where the error of the trial court in overruling the motion for new trial first had its effect, and rendered the remaining part of the trial nugatory.   The point where the error of the trial court first had its effect was where the parties, by joining in the issue of fact, placed the controversy upon a question of fact involved in the

issue on trial, in contradistinction to an issue of law, and referred it to the jury; in short, the point where the parties began the introduction of evidence. At this point in the former trial the plaintiff would have had a right to amend his single count based on ordinary negligence, so as to rely on wilful and wanton negligence, instead of ordinary negligence, for a recovery. *King* v. *Smith,* 47 *Ga. App.* 360, 367 (170 S. E. 546) ; *Foster* v. *Southern Ry. Co.,* 42 *Ga. App.* 830 (2) (157 S. E. 371) ; *Kennemer* v. *Western & Atlantic Railroad,* 42 *Ga. App.* 266 (3) (155 S. E. 771). This being true, the plaintiff had a right, before the remittitur from this court was filed in the trial court and before the judgment of this court was made the judgment of the trial court, to tender such an amendment; and if it was germane and good in substance, he was entitled to have it allowed, where only a motion to dismiss in the nature of a general demurrer was urged against it.

The question now presented is whether or not the petition as amended was subject to a motion to strike, which is in the nature of a general demurrer. When this case was formerly in this court it was said that there were no allegations and no evidence tending to show wilfulness or wantonness on the part of the Sinclair Refining Company. Relative to the leakage of gas from the pipes under the ground, the following amendment was offered: "That he amends paragraph 6 of the original petition by adding at the end thereof the following as a part of said paragraph, to wit: That immediately after the defendant undertook to repair and reconstruct the pump stand on the 18th of March, 1936, he begun to lose large quantities of gasoline; he complained to the agent of the defendant of the loss of gasoline, and he told them there was somewhere in the equipment a leakage of gasoline. Plaintiff had no right under the contract to remove any of said equipment so as to make the necessary inspection to find the point in said equipment where said gasoline was escaping, this duty being entirely on the defendant. The defendant refused to make said inspection or to make any effort to discover where the gasoline was leaking from. Plaintiff continued to lose gasoline from the point where the leak was located, and he again urged defendant's agent to make the necessary inspection to locate the same. Plaintiff continued to urge defendant to [remove] such part of said equipment as was necessary to find the place from which his gasoline was escaping,

and defendant told plaintiff that he only 'imagined' that he was losing gas, and said 'If we were to dig up all the tanks where operators claimed they were losing gas, we would be doing nothing but digging up tanks.' Almost every time the agent of defendant came to plaintiff's station to deliver gas he urged them to make an examination to determine the place from which his gas was escaping, and defendant's agent told plaintiff that his claim that gasoline was escaping from any defect in the equipment was something that he imagined, and that they did not have time and would not undertake to remove any of said equipment to find any supposed leak. Plaintiff was helpless in that he had no right to remove any of said equipment to find the defect, and could only urge the defendant to make the investigations and repairs. The conduct of the defendant with reference to its duty to correct and repair said equipment was such utter disregard of the rights of plaintiff under said circumstances, and was conscious indifference to the rights of plaintiff, and said defendant acted with actual and imputed knowledge that the inevitable or probable consequence of its conduct was to inflict injury on plaintiff, and was under the circumstances a wilful disregard for the rights of plaintiff."

This amendment was an effort by the plaintiff to convert the allegations in his petition, relative to the leakage of gas from the pipes under the ground, from ordinary negligence into wilful and wanton negligence, by alleging facts which constituted wilful and wanton negligence, and then conclude from these facts that the defendant's conduct amounted to wilful and wanton negligence. This conclusion of the pleader, we think, was erroneous. *Western Union Telegraph Co.* v. *Harris,* 6 *Ga. App.* 260, 262 (64 S. E. 1123); *Dowman-Dozier Mfg. Co.* v. *Central Ry. Co.* 29 *Ga. App.* 187 (114 S. E. 815). "To make an act wilful or wanton, specific facts must be alleged and proved. *Dowman-Dozier Mfg. Co.* v. *Central Ry. Co.,* supra. The conduct of the defendant must be 'such as to evince a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent.' *Central of Ga. Ry. Co.* v. *Moore,* 5 *Ga. App.* 562, 565 (63 S. E. 642); *Lanier* v. *Bugg* [32 *Ga. App.* 294, 123 S. E. 145]; *Forster* v. *So. Ry. Co.,* 39 *Ga. App.* 216 (2) (146 S. E. 516)." *King* v. *Smith,* 47 *Ga. App.* 360, 366 (170 S. E.

546). The allegations in paragraph 6 as amended did not meet the requirements of this rule.

However, paragraph 8 of the petition, relative to the removal or tearing down of the sign, is as follows: "On or about the 1st day of September, 1937, said lease contract between petitioner and defendant was terminated by mutual consent of the parties at interest. Defendant had before that time installed a large sign on the comb of petitioner's building, for advertising purposes, which sign was some 14 or 16 feet in length and running the entire length of petitioner's building, which was used as a gasoline and oil service-station. This sign was nailed down with cleats attached to the roof of the building on both sides of the comb; and defendant, having the right to remove said sign, did so through its agents and employees so unskillfully that holes were left along the entire length of the building, and the contents of said building which was used by petitioner for the sale of groceries and other articles were exposed to rain passing through said torn places in said roof. It was the duty of defendant through its agents and employees not to injure said roof, and petitioner did not know that the same was injured in the manner alleged until the next day after said sign was removed. During the night of the day of the removal of said sign a heavy rain fell on said building, and water passed through said roof and into the building of petitioner and his goods therein were saturated with water and injured as follows:" (Certain accurately described merchandise was here listed, in the total amount of $26.) Paragraph 8 was then amended by adding the following: "When defendant undertook to remove its sign from the building of plaintiff, its agents and servants were angry with plaintiff because he was changing from the sale of Sinclair gas to that of the Texas Company, a competitor of defendant, and wilfully tore the roof off plaintiff's building and left it in such condition that it rained through holes left by defendant, which was just before nightfall, and defendant had no time to repair his roof, and during the night a heavy rain fell and plaintiff's goods were injured and destroyed as set out in the original petition. Such conduct on the part of the defendant was such a conscious indifference to the rights of plaintiff as to amount to a wilful disregard for such rights, and the inevitable and probable consequences of its conduct was to inflict injury on plaintiff and was under said circumstances a

wilful .disregard for the rights of plaintiff." We think that paragraph 8, as amended, would have set forth sufficient preliminary facts to authorize the legal conclusion of the pleader of the ultimate fact that the defendant was guilty of wilful and wanton negligence. The objection here urged is in the nature of a general demurrer. If the petition authorized a recovery for any amount, whether for the leakage or for the removal of the sign, the general demurrer should have been overruled. Therefore we think that the judge erred in sustaining the motion to strike (which was in the nature and effect of a general demurrer), and in dismissing the case. If the evidence supports paragraph 8 of the petition as amended, which properly set forth wilful and wanton negligence, he will be entitled to recover; but if the evidence should be the same on the second trial as it was on the first, of course the judge should direct a verdict for the defendant.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*