28129. EDWARDS *et al.* *v.* ATLANTA, BIRMINGHAM AND COAST RAILROAD COMPANY.

Decided July 16, 1940. Adhered to on rehearing, July 31, 1940.

*Jule Felton, Gilbert C. Robinson,* for plaintiffs.

*Brandon, Hynds & Tindall, A. A. Marshall, Jay & Garden,* for defendant.

MacIntyre, J. Mamie Edwards brought suit against the Atlanta, Birmingham and Coast Railroad Company, to recover as damages the value of the life of her husband, Warren Edwards, who was killed by a passenger-train at a railroad crossing about one mile north of the City of Oglethorpe, Georgia. Before the trial Mamie Edwards died, and Oscar Edwards and Warren Edwards, the surviving children of Mamie Edwards and Warren Edwards, were made parties plaintiff. The verdict was for the defendant. A motion for new trial was overruled, and the plaintiffs excepted.

1. The plaintiffs complain of the court's failure to give to the jury the following requested charge: "I further charge you that the stop, look, and listen doctrine does not prevail in Georgia, as a matter of law. Therefore even if the decedent, Warren Edwards, had been aware of the fact that the train was approaching a railroad crossing, it would still have been a question for the jury as to whether or not he could have relied upon his sense of hearing as to the approach of the train, or whether that he was required to take additional precaution." The plaintiffs contend that "the particular matter in issue to which the written request to charge was particularly adjusted was: although it was not as a matter of law per se negligence for the deceased to attempt to cross without stopping, looking, and listening, the court left it open for the jury to surmise and to determine as a matter of fact his attempting to cross independently of the circumstances was such contributory negligence as would bar a recovery; and the refusal to charge as requested was prejudicial and harmful to movants, for the simple reason that, as a matter of law, the jury had a right to determine whether the deceased under the circumstances was justified in relying upon his sense of hearing as to the approach of the train, or whether the circumstances required him to take additional precaution; and although the charge as given may have been abstractly correct, it furnished no criterion for the jury to consider in passing upon the question of negligence, if the deceased attempted to cross without stopping, looking, and listening, other than the following qualification: 'the law in this as in all other cases properly leaving it for the jury to determine whether or not a given act on the part of either of the parties connected with the transaction was in itself negligence.'" The judge charged the jury as follows: "However, in this State it is not per se negligence for one not aware of the approach of the train to attempt a crossing of the railway tracks without stopping, looking, and listening; accordingly, such an attempt can not as a matter of law be said to constitute such contributory negligence as would bar recovery, the law in that as in all other cases properly leaving it for the jury to determine whether or not a given act on the part of either of the parties connected with the transaction was in itself negligence." The charge as a whole covered plainly and in substance the principles of law stated in the request to charge. The plaintiffs were not entitled to have

the court adopt this language, framed in argumentative form and emphasizing selective facts in their interest, and the failure to give the charge in the language requested was not reversible error. *Southern Railway Co.* v. *Wilcox,* 59 *Ga. App.* 785, 789 (4) (2 S. E. 2d, 225); *Southern Cotton-Oil Co.* v. *Skipper,* 125 *Ga.* 368 (3) (54 S. E. 110); *Southern Ry. Co.* v. *Reynolds,* 126 *Ga.* 657 (3) (55 S. E. 1039).

2. Complaint is made of the court's failure to give the following requested charge: "One exercising ordinary care is not bound to anticipate negligence when the law commands diligence for his protection. If the decedent had been on or near the crossing, or at any place he was by right entitled to be, he would have been warranted in assuming that the whole world would be diligent in respect to him and his safety." The first sentence of the requested charge was in effect given in charge; for the judge charged the jury: "The duty imposed by law upon all persons to exercise ordinary care to avoid the consequence of another's negligence does not arise until the negligence of the other is apparent or should have in the exercise of ordinary prudence have reasonably apprehended its existence." The plaintiffs can not complain that the judge did not use the exact language of the request. To have charged, as in the latter portion of the request, that "if the decedent had been on or near the crossing, or at any place he was by right entitled to be, he would have been warranted in assuming that the whole world would be diligent in respect to him and his safety," without a qualification submitting to the jury the issue of the plaintiffs' father's negligence, would have assumed, in the face of evidence to the contrary (plaintiffs' father approaching the crossing at sixty miles per hour, contrary to law), that the plaintiffs' father had not violated the duty of exercising ordinary care in approaching and using the crossing; since the law says to both the plaintiffs' father and the railroad company, "You should exercise ordinary care in approaching and using the public crossing." *Southern Railway Co.* v. *Slaton,* 41 *Ga. App.* 759 (2) (154 S. E. 718); Code, § 94-506; *Western Union Telegraph Co.* v. *Spencer,* 24 *Ga. App.* 471 (5) (101 S. E. 198); *Georgia Power Co.* v. *Gillespie,* 48 *Ga. App.* 688, 697 (173 S. E. 755). The plaintiffs could not claim and expect diligence in others if their dead father himself had failed to exercise ordinary care. *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (9) (118 S.

E. 488). Unless the request is perfect in every particular, it is not reversible error to refuse to charge as requested. *Hardeman* v. *Ellis,* 162 *Ga.* 664 (26) (135 S. E. 195); *Green* v. *State,* 124 *Ga.* 343 (8) (52 S. E. 431). Under the rule that while the principle of law may be laid down hypothetically, and may be unobjectionable in the abstract, as the language in this last sentence appears to be (*Central Railroad &c. Co.* v. *Smith,* 78 *Ga.* 694, 700, 3 S. E. 397), yet where the instruction contains a statement that the rule so announced applied to the facts of the case, being based upon an assumption of the existence of controverted facts, that portion of the request (to wit, the last sentence thereof), asserting the applicability of the proposition to the facts of the case, is objectionable. 1 Reid's Branson Instructions to Juries, 48(4), § 21. The charge requested here, without the qualification suggested, was not correct in all particulars, and it was not reversible error to fail to charge as requested. This ground is not meritorious.

3. The plaintiffs complain of the following excerpt from the judge's charge: "I charge you that the employees of the defendant railroad company who were in charge of the operation of the train at the time of the collision complained of had a right to assume that Edwards was a rational human being, and would exercise reasonable care and diligence for his own protection." The plaintiffs contend that "as an abstract principle of law this charge, under the facts to which it was applied, is not sound, for the reason that the court omitted the qualifying words necessary to make it sound when applied to the facts;" and that this charge, without the proviso to the effect that this rule would not be applicable if the jury determined from the evidence that the employees in charge of the train were guilty of negligence, was unsound, illegal, harmful, and prejudicial to plaintiffs, especially in view of the allegations and proof offered in support of these facts. In the absence of anything to the contrary, every adult is presumed to possess ordinary intelligence, judgment, and discretion. *Hendrix* v. *Vale Royal Mfg. Co.,* 134 *Ga.* 712 (68 S. E. 483). The engineer had a right to assume that the deceased possessed such faculties, or, in other words, that he was a rational human being. There being a duty on the deceased to exercise ordinary care in approaching and using the public crossing, the engineer likewise had the right to assume that the deceased would exercise ordinary care for his own safety

and protection. The charge complained of, without a qualification submitting to the jury the issue of the defendant's negligence, would have assumed, in the light of evidence to the contrary (there being evidence that the train was traveling sixty miles per hour, and that the engineer failed to blow the whistle and ring the bell, and keep a strict lookout ahead), that the engineer had not violated the duty of blowing the whistle and keeping a strict lookout ahead, and might have constituted reversible error, as urged by the plaintiffs. *Davis* v. *Whitcomb,* supra. However, the judge elsewhere had charged the jury with reference to the negligence of the defendant's employees, and, before giving the particular instruction complained of, specifically charged the jury as follows: "By suggestion I give some matters in charge here. They, of course, will be considered with all other instructions in the case. In the main they are mere general propositions of law that have been touched upon in some other part of the instructions." This excerpt, when considered with the charge as a whole, is a correct statement of law applicable to the pleadings and the evidence, and does not constitute reversible error. See 4 Reid's Branson Instructions, 842, § 2870; *Metropolitan Street Railroad Co.* v. *Johnson,* 91 *Ga.* 466, 470 (18 S. E. 816).

4. Ground 4 complains of the following excerpt from the judge's charge: "One who knowingly and voluntarily takes a risk of injury to his person or property, the danger of which is so obvious that the act of taking such risk in and of itself amounts to a failure to exercise ordinary care and diligence for his own safety and that of his property, can not hold another liable for damages." The plaintiffs insist "that the court in giving this one excerpt expressly withdrew from the jury any right or authority to determine whether decedent was guilty of any contributory negligence which might have defeated a recovery or diminished the recovery, and passed upon that question himself. . . This charge was an intimation of an opinion from the court, setting forth what acts of the decedent would constitute negligence sufficient to bar a recovery," and by this charge the judge "tells the jury in substance that it would be per se negligence for Edwards to have attempted to cross, and that such an attempt on his part amounted to a failure to exercise ordinary care and diligence," and it "takes from the jury the right to determine under the circumstances whether or not the

attempt to cross was negligence," and that this excerpt "is the declaration of a fact, and was not a hypothetical question presented to the jury." The Supreme Court held, in *Southern Railway Co. v. Hogan*, 131 *Ga.* 157 (62 S. E. 64) : "One who knowingly and voluntarily takes a risk of injury to his person and property, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety and that of his property, can not hold another liable for damages from injuries thus occasioned." This principle has been recognized on numerous occasions. See *Taylor v. Morgan*, 54 *Ga. App.* 426, 431 (188 S. E. 44). It therefore appears that the excerpt complained of is, except for the word "sustained," verbatim the same as the principle in the *Hogan* case, supra, and is a correct abstract principle of law, and was not the expression of an opinion as urged by the plaintiffs. It did not in any sense undertake to instruct the jury that the railroad crossing was a place of danger, or that the situation existing at the particular time presented an obvious danger, or that the deceased in recklessly assuming a particular risk was negligent as a matter of law, but the judge was hypothetically stating to the jury that if "one" (not necessarily the plaintiffs' father, but any one) knowingly and voluntarily takes a risk of injury (not necessarily goes upon a railroad crossing, but takes any risk) to his person or property, the danger of which is so obvious that the act of taking such risk amounts to a failure to exercise ordinary care and diligence for his own safety (which had been explained to the jury immediately theretofore), such person (not necessarily the deceased, but any person) can not hold another (not necessarily the present defendant railroad company, but any one) liable for damages for injuries. See *Thomas v. State*, 49 *Ga. App.* 484, 489 (176 S. E. 155) ; *Croker v. State*, 57 *Ga. App.* 895 (197 S. E. 92).

In numerous other places in the charge the judge left to the determination of the jury the question of negligence; and this charge, when considered with such other parts, can not be said to have intimated to the jury an opinion that the acts charged against the plaintiffs' father amounted to a failure on his part to exercise ordinary care and diligence. See *Pollard v. Boatwright*, 57 *Ga. App.* 565 (4) (196 S. E. 215). The case of *Western & Atlantic Railroad Co. v. Jarrett*, 22 *Ga. App.* 313, 315 (96 S. E. 17), is differen-

tiated from the instant case, and is not here controlling. The requested charge in that case (as appears from the record) which was refused, and properly so, because of an expression of an opinion, was in part as follows: "A railroad-track is a place of danger," which of course was an expression of an opinion that a railroad-track is a place of danger, which it may or may not be, depending on the circumstances. For the same and like reason the other cases relied on by plaintiffs are distinguished; for in those cases the judge told the jury what acts would constitute negligence. Here the judge gave in charge a correct abstract principle of law applicable to the pleadings and the evidence. This ground is not meritorious.

5. Grounds 5 and 7 will be considered together. The plaintiffs complain of a rather lengthy excerpt from the charge on contributory and comparative negligence, on the ground that the judge, under the facts of this case, should have qualified this portion of the charge with a charge on wilful and wanton negligence. This contention is without merit; for it is not a good ground, or criticism of a portion of the charge, that under the facts of the case the court should have charged another principle of law. *Green* v. *State,* 150 *Ga.* 121 (102 S. E. 813); *Thompson* v. *Powell,* 60 *Ga. App.* 796 (5 S. E. 2d, 260). Grounds 5 and 7 complain of the failure of the judge to charge the law of wilful and wanton negligence. It is contended that the testimony of W. N. Bagley, an engineer of the defendant, who at the time of the accident was in control of the second engine of the double-header, was sufficient to show wilful and wanton negligence on the part of the defendant's employees; and in support of this contention the plaintiffs emphasize that part of Bagley's testimony on cross-examination, that Edwards (the deceased) "was three or four hundred feet up the highway when I first saw him. I know he was running at a rapid rate of speed. . . Warren Edwards was 150 feet away when I realized there was going to be a wreck. I saw him 250 feet away. At 150 feet I knew there was going to be a wreck. I did not blow my whistle then or apply my brakes. I did nothing." It must be noted that Bagley was on the second engine of a double-header, which had been cut out and had no control of the brakes on the train. The engineer in charge of the first engine had complete control of the train. Bagley further testified: "I reached and got my whistle-

cord just at the time he [the engineer in the first engine] started to blowing his. I reached for the cord, but I did not do anything." It is to be remembered that Bagley was not the engineer in charge of the train. There were two locomotives, and the undisputed evidence shows that Bagley was the engineer on the second locomotive. Engineer Courdriet, who died before the trial, was in charge of the lead-engine, and according to the undisputed evidence he was in charge of the train, was responsible for giving the signals, and was the only engineer who controlled the brakes on the train. Bagley testified positively, that the brakes on his engine were cut out; that he could not apply the brakes to the train, but that the brakes were controlled solely from the lead-engine which was in charge of Courdriet; that when he (Bagley) saw that the driver of the automobile could not stop before colliding with the train, he reached for his whistle-cord, intending to blow the whistle on his engine, but before he pulled the whistle-cord the whistle on the lead-engine began blowing, and therefore he did not sound the whistle on his engine. Since Courdriet was responsible for the train, and since he sounded the whistle in warning to the deceased, it would not be wilful and wanton negligence for Bagley to fail to blow his whistle. However, he did undertake to do so, and did the only thing possible under the circumstances, in view of the fact that he was unable to apply the brakes to the train, as they had been cut out on his engine. It does appear that the brakes were applied, and that the train was stopped in a shorter distance than would ordinarily be required to stop a train of the length of this train on a level track.

Wilful and wanton misconduct has been defined by this court to be "such as to evidence a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent." *Lanier* v. *Bugg,* 32 *Ga. App.* 294, 297 (123 S. E. 145). Upon this subject this court has said: "The court, in charging the jury upon the subject, should make it plain that it is never applicable unless the defendant's conduct was such as to evince a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent."

*Central of Ga. Ry. Co.* v. *Moore,* 5 *Ga. App.* 562, 565 (63 S. E. 642). "'In an action to recover damages for injuries alleged to have been inflicted by reason of negligence, before the person charged with the negligence can be held guilty of wilful or wanton negligence the evidence must show that he knew his conduct would inflict injury, or that, on account of the attendant circumstances which were known to him, or with knowledge of which he was chargeable, the inevitable or probable consequences of his conduct would be to inflict injury, and with reckless indifference to the consequences of such conduct he committed the act, or omitted to do his duty to avoid the threatened injury.' . . There must be something more than the mere proof of failure to give a statutory signal or make a stop required by a statute in approaching a crossing. There must be affirmative evidence of facts tending to show wilfulness, wantonness, or the existence of particular circumstances from which an inference of a conscious indifference to consequences might legitimately be drawn. And these facts must be shown in addition to the mere omission to give statutory signals or take statutory precautions in approaching crossings. If this be not the law, then practically every case of negligent injury can be made the vehicle of submitting to the jury the question of wilfulness and wantonness, by merely using adjectives in describing the character of the negligence." *Southern Ry. Co.* v. *Davis,* 132 *Ga.* 812, 818 (65 S. E. 131). Since the evidence failed utterly to show wilful and wanton negligence, the failure of the court to charge these principles of law was not error. There is no merit in either the fifth or the seventh ground.

6. Ground 6 complains of the following excerpt from the charge: "I charge you that ordinary care is that degree of care which every prudent man would exercise or use under similar circumstances." The plaintiffs contend that this instruction "is not sound as an abstract principle of law, in that the rule as codified in the Code of 1933, § 105-201, is materially different, the present rule being that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." The plaintiffs further contend that the instruction "imposed on the decedent a far greater degree of care than is or was required by the rule laid down in the Code as above quoted, and was therefore harmful and injurious." The Code, § 105-201, declares: "In general, ordinary

diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." The Code of 1910, § 3471, declares: "Ordinary diligence is that care which *every* prudent man takes of his own property of a similar nature." (Italics ours.) The excerpt complained of was in substantial accord with the definition of "ordinary diligence" given in the Code of 1910, § 3471 (*City of Atlanta* v. *Harper, 129 Ga.* 415, 59 S. E. 230); and this court has held, that, there being no substantial difference between the Code of 1910, § 3471, and the Code of 1933, § 105-201, it is not prejudicial error requiring a new trial to give in charge the definition in the Code of 1910 instead of the definition in the Code of 1933. *Pollard* v. *Duffee, 56 Ga. App.* 523 (193 S. E. 258); *Pollard* v. *Boatwright, 57 Ga. App.* 565 (7) (196 S. E. 215). Furthermore, this charge did not require of the decedent a greater degree of care than is required by § 105-201. In other words, it did not require of the decedent a degree of diligence which might be exercised by any one more than ordinarily prudent. *White* v. *Knapp, 31 Ga. App.* 344 (2) (120 S. E. 796). This ground is not meritorious. See *Brown Store Co.* v. *Chattahoochee Lumber Co.,* 1 *Ga. App.* 609, 610 (57 S. E. 1043); *Sanders* v. *Central of Ga. Ry. Co.,* 123 *Ga.* 763 (4) (51 S. E. 728); *Richmond & Danville R. Co.* v. *Howard, 79 Ga.* 44 (4) (3 S. E. 426); *Metropolitan Street R. Co.* v. *Johnson,* 91 *Ga.* 466, 470 (2) (18 S. E. 816); *Richmond & Danville R. Co.* v. *Mitchell,* 92 *Ga.* 77 (2) (18 S. E. 290); *Goodwyn* v. *Central of Ga. Ry. Co.,* 2 *Ga. App.* 470 (5) (58 S. E. 688).

7. In ground 8 the plaintiffs contend "that the court erred in failing to charge what care and diligence was required of the defendant in approaching and crossing the public highway at the time and place of the collision between the defendant's train and Edwards' car; that ordinary care was defined, but only in its relation to the contributory negligence of the decedent, Edwards, the only instructions touching on the question of negligence of the defendant, except as to a duty after his presence became known, being a charge on per se negligence;" and that "a failure of the court to charge on the ordinary care and diligence required of the defendant company in approaching the crossing limited a recovery by plaintiffs to acts of negligence which are violations of law, except one short excerpt was given on the duty after the presence

of the decedent became known." This ground is not meritorious; for after a careful reading of the charge, and construing the charge as a whole, it appears that the judge fully instructed the jury with reference to care and diligence and the duties and obligations resting upon each party to the case. It will be specially noted that after calling the attention of the jury to the various allegations of negligence, as set up in the plaintiffs' petition as amended, the court in effect instructed the jury that they were to determine whether or not the defendant had been guilty of any of the acts of negligence, and also determine if such were the proximate cause of the injury. The charge as a whole fairly, fully, and completely presented the issues in the case, and is not subject to the criticism urged in this ground. See *Smallwood* v. *Pollard*, 54 *Ga. App.* 617, 619 (188 S. E. 594).

8. We will now consider the general grounds. The accident occurred at a crossing of the line of track of the defendant with State highway No. 90, about a mile north of the City of Oglethorpe, about noon on a day when the weather was clear and dry. The deceased was traveling north alone on the highway, which was crossed diagonally by the railroad, and the angle between the highway and the track on which the train was approaching from the northwest was 150 degrees. The evidence clearly showed that the road was straight for a distance of 400 or 500 feet south of the crossing, and that the railroad-track was straight, or practically straight, for something like 1200 to 1400 feet northwest of the crossing. The evidence also showed that a person traveling north on the highway at a point 300 feet south of the crossing had a clear view of the railroad-track for a distance of 375 feet, and that at a point 200 feet south of the crossing there was a clear view up the railroad-track of 620 feet. These distances were plainly visible, with no obstructions intervening. There was no other vehicle in the highway, and no other risk or danger which might have caused or created an emergency or distracted the attention of the deceased. The deceased lived close to the crossing in question, and had lived at a little settlement known as New York for about twenty years. He was thoroughly familiar with the crossing, having crossed it at least six times per week over that period of time; and so far as the evidence disclosed he was possessed of normal physical faculties, with no impairment of either sight or hearing.

Under the view of the evidence most favorable to upholding the verdict, there can be no conclusions other than that the train, which consisted of two locomotives and nineteen cars, was approaching the crossing from the northwest at a rate of speed of from 35 to 40 miles per hour; that the crossing signal was sounded by engineer Courdriet by the blowing of the whistle on the lead-engine; that when it became apparent that the deceased would collide with the train, the whistle was again sounded and the emergency brakes applied, bringing the train to a stop within less than its length; that the train was closer to the crossing than the deceased; that the pilot of the engine was entirely across the highway at the time the deceased drove his car into the side of the locomotive, and that there was absolutely nothing the defendant could have done to prevent the collision, except what was done, namely, giving warning by sounding the whistle, ringing the bell, and applying the emergency brakes.

The evidence, taken in its most favorable light to upholding the verdict in favor of the defendant, shows that the deceased was operating his automobile at a rate of speed of at least 60 miles per hour. This speed constituted negligence per se on the part of the deceased, inasmuch as the law regulating the speed of automobiles at the time of the accident permitted the operation of such a vehicle on a highway at a rate not in excess of forty miles per hour. It appears from the testimony of Bagley, the engineer on the second engine of the double-header, that he first saw the deceased about 300 feet from the crossing, and at that time the lead-locomotive was within 100 to 150 feet of the crossing. The train was traveling at 35 to 40 miles per hour, and yet, with its speed retarded by the application of the brakes, Edwards drove his car into the side of the engine. These physical facts would indicate that the deceased was traveling at a rate of speed approximately twice that of the train. The deceased was in full possession of his normal physical faculties, and could easily have seen the train when he was 300 feet or more from the crossing. Had he been attentive at the time, and even glanced to the left (knowing as he did that the crossing was where it was and that a train might be thereon, he having lived near the crossing for nearly 20 years), he might have seen his danger, and have easily avoided it by applying the brakes on his automobile and stopping his car. There was nothing

to prevent him from hearing the whistle; and upon hearing it, if he had applied the brakes on his automobile or turned to the right or the left, he could have avoided the accident and prevented not only the injury to himself but the damage to the defendant's property; it appearing that certain damage was done to the locomotive. The evidence disclosed, and the jury were authorized to find, that the deceased was killed as a result of his failure to exercise ordinary care under the circumstances. The verdict in favor of the defendant was authorized. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON REHEARING.

MacIntyre, J. The court can not crowd every legal principle involved in a case in a separate and distinct paragraph. Hence, "instructions are considered as a series and it is not improper to refer in one instruction to another instruction in the charge." 1 Reid's Branson on Instructions to Juries, 273, § 100. The excerpts of the charge referred to in divisions 3 and 4 of our opinion, in addition to the reasons therein stated, were not erroneous; for they come within the rule that they were performing one of the offices of the charge which "is to define the legal principles covering facts proved or presumed in a case; or to define for the jury the legal principles governing the facts presented." Id. 3, § 2 (23, 24). In addition to what has been said in division 2, the judge did not err in failing to give the requested charge, for the further reason that "the object of instructions is to state the issues and apply principles of law thereto rather than to argue the question in controversy, and it follows that instructions which take the form of an argument to the jury should not be given by the court, and it is not error to refuse such an instruction although the argument itself may be entirely legitimate." 1 Reid (supra) 300, § 108; *Holloway* v. *Milledgeville,* 35 *Ga. App.* 87 (6), 88 (132 S. E. 106); *Savannah, Florida & Western Ry. Co.* v. *Evans,* 115 *Ga.* 315 (41 S. E. 631, 90 Am. St. R. 116); *Macon Railway & Light Co.* v. *Vining,* 123 *Ga.* 770, 772 (51 S. E. 719). Even though it be pertinent and true, as stated in the request, that "if the decedent had been on or near the crossing, or at any place he was by right entitled to be, he would have been warranted in assuming that the whole world would be diligent in respect to him and his safety," yet the court is not

bound to charge an isolated principle when it is presented thus isolated, and its being given singly would, in the judgment of the court, mislead the jury as to the true merits of the cause. *Long* v. *State,* 12 *Ga.* 293, 323. It seems to us that the language above quoted from the request to charge is more appropriate for argument to the jury by counsel than for instruction by the judge to the jury. The other grounds and points raised in the brief for the plaintiffs on rehearing being considered, the original judgment is *Adhered to. Broyles, C. J., and Gardner, J., concur.*