45026. HERRING v. R. L. MATHIS CERTIFIED DAIRY COMPANY et al.

EBERHARDT, Judge. This case previously appeared as Herring v. R. L. Mathis Certified Dairy Co., 118 Ga. App. 132 (162 SE2d 863), and upon writ of certiorari in Bourn v. Herring, 225 Ga. 67 (166 SE2d 89), where there was a reversal of the judgment of this court. Our judgment was subsequently conformed to that of the Supreme Court. Herring v. R. L. Mathis Certified Dairy Co., 119 Ga. App. 226 (166 SE2d 607). Reference is made to those opinions for a statement of the pleadings and facts.

Thereafter and based upon the judgment of the Supreme Court, defendants R. L. Mathis Certified Dairy Company and R. L. Mathis filed their motions for summary judgment on February 21, 1969, and defendants Mrs. Willeen Bourn and Grant Park Baptist Church filed their motions for summary judgment February 28, 1969. All motions were supported by depositions, interrogatories and affidavits which had been obtained from parties and witnesses. Plaintiff opposed the motions, and a hearing was set thereon for March 27, 1969. Plaintiff sought and obtained a continuance of the hearings until April 3, 1969. In the meantime, and pending the hearings, plaintiff took certain depositions, served certain interrogatories and asked for hearings on her applications for orders for the production of liability insurance policies and statements of certain of the parties and witnesses which were alleged to be in the possession of defendants or their counsel, which plaintiff thought might lead to admissible evidence. The court assigned all pending matters for hearing at the same time, including objections of defendants to some of the interrogatories which plaintiff had served on them.

Plaintiff urged that the motions for summary judgment were premature because she had not completed discovery pro-

cedures which she had intended to pursue, that she had served interrogatories on the defendants, portions of which had not been answered, and that there was a possibility that additional witnesses having knowledge of the occurrence might be discovered.

Interrogatories had been served on the dairy, some of which it answered, but objections were made to others and these objections were before the court. There were questions, for example, as to what a certified dairy is, how many are in the Atlanta area, what certified milk is, and its price at wholesale and retail in varying size containers; as to how large the dairy farm was in acreage and what portion of it was devoted to egg production and to general farming; as to whether the dairy advertised, what the cost of advertising was, and whether it employed the services of public relations agencies; as to whether any employee was an entertainer, and if so what his salary was, and whether the contract was written or oral, and whether he appeared at places other than the dairy; as to whether there was liability insurance, and if so, the name of the company, the number of the policy and the limits thereof. There were others.

Similar interrogatories were served on Grant Park Baptist Church, with added questions as to whether any insurance company had investigated the matter, and who had conducted it; the names of all persons who attended the picnic (this was answered by listing all who were known) and the names of all persons having knowledge of the occurrence (the name of Dr. Prue Kelley, pastor of the church, and 11 others were listed by way of answer), and whether there had been donations or contributions of any kind or in any amount by the dairy to the church (there had been none). Some questions were answered, and objections were made to others.

Interrogatories were served on Mrs. Bourn, one of the defendants, some of which were answered and others were objected to. There were questions, inter alia, as to her marital status, whether she had been previously married, the names and ages of her children, whether she had been to the area on prior occasions for picnics, whether other groups were present on this occasion, whether the dairy provided any entertainment or refreshment for the group, where she parked her car, what questions were asked of the children as to their swimming

ability, whether she could swim or dive and what training she may have had as to supervising groups of children, whether she had been present on any other occasion when a person drowned and as to what inspection she made of the premises.

Extensive depositions were obtained from Mr. and Mrs. William E. Bailey, who had been present with a faculty group from Towers High School and who learned from some children that a boy in the church group was missing, after which Mr. Bailey and others of his group rendered assistance in locating and rescuing the body of plaintiff's son from the bottom of the lake near a raft.

Objections to the unanswered interrogatories on the grounds of irrelevancy, etc., were later sustained.

From the depositions, affidavits and answered interrogatories it appeared that plaintiff's son had probably gone from the shore to the raft in the middle of the lake by way of a paddle boat and that he may have remained on the raft while other children swam and played until shortly before time for eating. The other children went to their picnic area. It was noticed that plaintiff's son was not among them, and some of the group went out to look for him. He was not found, and had not shown up when the others had finished their meal. It was first thought that he might be walking about the grounds or in the woods, and a search party went out to look for him, but the hour was growing late and darkness was coming on and the church group became excited and distraught about his absence, and elicited help from the Towers High School faculty group. Athletic coaches from that group (who were near the lake but in another area) located the boy and obtained a resuscitator, but to no avail.

Employees of the dairy were on the property but were about their duties in the buildings and knew nothing of the occurrence until after it had happened. Recreational facilities such as picnic tables, volleyball, basketball and horseshoes and swimming were provided and made available without charge to groups on a reservation basis, but the dairy did not provide supervision of the groups, that being left in each instance to the leader or those in charge of the particular group.

The hearing scheduled for April 3, proceeded without any further objection from either side and without further request

for continuance, and on May 16, 1969, the court entered orders sustaining all of the defendants' objections to the unanswered interrogatories, and, at the same time entered orders reciting that upon a consideration of the. pleadings on file, the depositions, affidavits and all other evidence presented, the motions for summary judgment were sustained and the complaint was dismissed. From these orders plaintiff appeals. *Held:*

1. This appeal was originally directed to the Supreme Court because certain constitutional questions were sought to be raised. But that court transferred the appeal to us, in effect holding that no constitutional issue was raised or involved and that the only questions for decision were within our jurisdiction. *Herring v. R. L. Mathis Certified Dairy Co.,* 225 Ga. 653 (171 SE2d 124).

2. There is no merit in the several enumerations relative to the proceeding on a hearing of the motions for summary judgment when there were pending certain discovery procedures on which orders had not been entered.

Appellant asserts that she had been delayed in completing discovery because the trial court had ordered that it be suspended pending the outcome of a former appeal to this court. We have searched the record but have found no such order, and none is listed in the portions of the record which were to be omitted from this appeal. We conclude that the order was oral. An oral announcement or direction by a judge is not a judgment until and unless it is reduced to writing. *Seabolt v. Seabolt,* 220 Ga. 181 (1) (137 SE2d 642) ; *Construction & Genl. Laborers Union v. Williams Constr. Co.,* 212 Ga. 691 (2) (95 SE2d 281). Discovery may generally proceed without leave of court. *Code Ann.* § 81A-126. It could not, of course, proceed in the face of a protective order under § 81A-130 (d) or contrary to its provisions. But since no order of the kind is in the record, we are unable to know its provisions.

Conceding, however, that the trial court orally directed suspension of the discovery proceedings pending the former appeal, we do not find, from a careful examination of this record, anything indicating an abuse of discretion in hearing the motions at the time fixed.

Plaintiff's son drowned August 26, 1965. The suit. was filed August 26, 1967. There was considerable discovery prior to

the first appeal in which our judgment was entered June 14, 1968, and rehearing was denied July 8, 1968. It would seem that additional discovery, if needed, should have been accomplished well in advance of the hearings on the summary judgment motions April 3, 1969. Postponement of the hearings for further discovery was a matter in the sound discretion of the trial court. *Code Ann.* § 81A-130 (d). This rule is recognized in the holding of the Supreme Court in *McCurry v. Bailey,* 224 Ga. 318 (162 SE2d 9) that there should be a postponement where it is sought to obtain the evidence of an identified eyewitness to the occurrence—not an unidentified or unknown witness. "The court quite properly denied the Rule 56 (f) [*Code Ann.* § 81A-156 (f)] motion for further discovery by which plaintiff sought to engage in still another 'fishing expedition' in the hope that he could come up with some tenable cause of action." Waldron v. Cities Service Co., (2d Cir.) 361 F2d 671. "What must be shown . . . are such circumstances as give the court reason to expect that beneficial objectives of pre-trial discovery will be achieved." Southern R. Co. v. Lanham, (5th Cir.) 403 F2d 119, 127. The matter of cutting off discovery falls within the discretionary powers of the trial court and, absent abuse or prejudice, it will not be disturbed. The court has inherent power to control the time table on discovery within reasonable limits. Greyhound Lines, Inc. v. Miller, (8th Cir.) 402 F2d 134. If the proposed discovery is merely cumulative in nature, or if it appears to be harassing—running like a stream after a freshet, uncontrolled and out of its banks—the court should exercise its discretion and bring it within the channell. The information sought should have a reasonable relationship to the issues and there should be some indication that it may be of value in the trial of the case.

We do not perceive that a suspension of the discovery proceedings pending an appeal would in any manner deter plaintiff from making investigations, interviewing possible witnesses and obtaining from them affidavits as to any helpful information, which might be used in connection with the case, including possible motions for summary judgment. No reason appears why this could not have been done as to those in the church group with whom plaintiff's son went on the picnic, or the faculty group from Towers High School, some

of whom rescued the son's body from the waters of the lake. Depositions (or interrogatories) from some in each group were taken, and from what these testified the court was authorized, in its discretion, to conclude that the proposed further discovery among a possible 250 people as mentioned by appellant (it does not appear that the total of both groups was nearly so great) would not have revealed anything helpful to the plaintiff. There was no showing that any specific individuals had knowledge of facts in addition to those already discovered. If new or additional facts were not likely to be revealed there was no reason why the court should not proceed on those before it. A mere *possibility* that some new facts may turn up is not enough to require a postponement.

Moreover, the issues in the case were narrow and limited under the holding of the Supreme Court in *Bourn v. Herring*, 225 Ga. 67, supra, and the trial court was authorized to conclude from the evidence already obtained, including that of the plaintiff, that the proposed further discovery was not likely to reveal anything of a helpful nature concerning those issues.

"The grant of the summary judgment [for defendants] was therefore appropriate. . . The claim that the plaintiffs were not given enough time to gather and submit affidavits was properly denied in the discretion of the court. They had had reasonably full opportunity to produce affidavits, and it was clear that the further ones sought were merely cumulative." California Apparel Creators v. Wieder of Calif., (2d Cir.) 162 F2d 893, 901 (174 ALR 481), cert. den., 332 U. S. 816 (68 SC 156, 92 LE 393). "[W]hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists, and, of course, he does not do that by mere denial or holding back evidence." Bruce Constr. Corp. v. United States, (5th Cir.) 242 F2d 873, 875.

Where the parties have had full opportunity to obtain and submit affidavits, a summary judgment should be granted where there is no evidence showing wilful and wanton negligence, that being the standard required. Hufner v. Erie R. Co., 26 FSupp. 855; Braughton v. United Air Lines, 189 FSupp. 137; Alderman v. Baltimore & Ohio R. Co., 113 FSupp. 881; Earley v. Roadway Express, Inc., 106 FSupp.

958; Herring v. Eiland, (Fla.) 81 S2d 645. This is particularly true where, as here, there is no material conflict in the evidence upon which that issue must be determined.

3. Nor was there error in hearing the motions for summary judgment at the time scheduled. Plaintiff contends that the hearing was prematurely scheduled because two of the motions for summary judgment had been filed less than thirty days prior to the date when all were first set for hearing, and this would have been meritorious if the hearing had proceeded on March 27, as first scheduled. *Code Ann.* § 81A-156 (c); *Davis v. American Acceptance Corp.*, 119 Ga. App. 265 (167 SE2d 222). However, no hearing was had on that date; it was re-scheduled, at plaintiff's instance, on a date which was more than thirty days after all motions had been filed. The continuance was doubtless granted and the hearings re-scheduled in order to afford plaintiff, as the opposing party, the full thirty days provided to her by the statute.

4. Under the ruling of the Supreme Court, plaintiff has no claim upon which relief can be granted in this case unless it were made to appear, (a) that plaintiff's son was a child of less than ordinary intelligence and understanding for his age at the time, or (b) that the dairy and its manager were guilty of a wilful and malicious failure to guard or warn the decedent against a dangerous condition, or that the church's Sunday school superintendent was likewise guilty of wilful misconduct which proximately caused the decedent's drowning.

It is conceded that plaintiff's son was 14 years, 4 months and 20 days old at the time of his death. Plaintiff, the child's mother, testified that as far as she knew he was a normal boy about five feet five inches tall, of average weight and with no physical problems, that he could and did ride a bicycle on the city streets in his work as a delivery boy for a drug store and had worked at a grill. He attended public school and had done so since reaching the age when children are admitted and had done his school work satisfactorily, moving along in the classes with other boys of his age. He had completed the eighth grade and had never failed in any subject. He was a member of the school track team. This evidence was in no way controverted (indeed, there was other similar supporting evidence), and it was sufficient to show that the son was a boy of intelligence equivalent to or better than that of the ordinary boy

of his age. It is true that the mother also testified that the boy could not swim, but it is not a requisite to intelligence and understanding that one have the ability to swim. Further, she admitted that the boy was given permission to go on the picnic and with knowledge that he was taking his swim suit along.

5. There is a total absence of evidence that would indicate any wilful or malicious misconduct toward the boy by any of the defendants. Indeed, the evidence demands a finding that the treatment (by all of them) of this boy was no different from that accorded any other child who was in attendance at the picnic, which was generally the treatment that might be accorded children of this age group on any similar occasion by people occupying similar relationships toward them. It was what would be expected of the ordinary adult in similar situations.

Mr. Mathis (and hence the dairy) knew that the group were holding the picnic on the dairy property, but he was not in charge of them and could not have been expected to leave his duties with the dairy for the purpose of superintending the conduct of the children. It does not appear that there were any dangers in the use of this pond or lake which are not to be found in the use of any similar body of water, and which, as the Supreme Court has pointed out, this boy was presumed to know about and to appreciate. No duty, therefore, devolved on Mr. Mathis or the dairy to warn of these, or to do more than to refrain from committing some wilful or malicious act against him, as the Supreme Court has held.

Even if the dairy were "operating a natural swimming pool," the mere failure to comply with some of the provisions of an ordinance of DeKalb County regulating the operation of swimming pools would not be sufficient to support a charge of wilful and malicious action against plaintiff's son. *Southern R. Co. v. Davis,* 132 Ga. 819 (65 SE 131).

Mrs. Bourn, the Sunday School superintendent and representative of Grant Park Church, who was in charge of the group, appears to have kept a general watch over the children to the end that they should not misbehave or engage in activity which might cause harm to themselves or others, but in the nature of things she could not keep her eye on every child at all times.

None of the defendants knew that the boy could not swim, and when he dressed in his swim suit and went to the lake it was reasonable to assume that he could do so. She did question him, along with all others, as to whether he could swim, and he answered that he could. None of the defendants knew that the boy was in any difficulty out in the lake. Indeed, it appears that nobody knew anything about it (not even the other children who were in the lake) until the children were called from the lake to eat and a check revealed that he was missing. When his body was found the fire and police departments were immediately called for help in resuscitating him, but to no avail.

"There must be affirmative evidence of facts tending to show wilfulness, wantonness, or the existence of particular circumstances from which an inference of conscious indifference to consequences might legitimately be drawn. And these facts must be shown *in addition to* the mere omission to give statutory signals or take statutory precautions in approaching crossings. If this be not the law, then practically every case of negligent injury can be made the vehicle of submitting to the jury the question of wilfulness and wantonness, by merely using adjectives in describing the character of the negligence." *Southern R. Co. v. Davis,* 132 Ga. 812, 819, supra. "It will not do to say that the jury are the judges of whether such conduct exists. They are not the judges of it, where there is no evidence of it." Id. p. 818. Vide, *Williams v. Sou. R. Co.,* 11 Ga. App. 305 (75 SE 572); *Lanier v. Bugg,* 32 Ga. App. 294, 297 (123 SE 145); *Blanchard v. Ogletree,* 41 Ga. App. 4, 7 (152 SE 116); *King v. Smith,* 47 Ga. App. 360 (170 SE 546); *Reid v. Sinclair Refining Co.,* 62 Ga. App. 198, 201 (8 SE2d 527); *Edwards v. Atlanta, B. & C. R. Co.,* 63 Ga. App. 212, 219 (10 SE2d 449). Wilful and wanton negligence does not arise from a situation of implied notice—one where the defendant "should have known." *Western & A. R. Co. v. Michael,* 175 Ga. 1, 10 (165 SE 37). "[W]here all the testimony relating to a question of fact excludes every reasonable inference but one, the issue becomes an issue of law, for determination by the court." *Empire Life Ins. Co. v. Jones,* 14 Ga. App. 647 (3) (82 SE 62); *Life Ins. Co. of Virginia v. Pate,* 23 Ga. App. 232, 235 (97 SE 874).

The rule that a summary judgment should be granted if there is no genuine issue of material fact for resolution by a jury

is but another way of stating this rule. Where "conduct is susceptible of but one inference that it is not negligent, or, in cases of wantonness, that it is not wanton, and reasonable minds could draw only such inference therefrom, then the absence of negligence, or the absence of wantonness, is a question of law for the determination of the court." *Arrington v. Trammell*, 83 Ga. App. 107, 113 (62 SE2d 451). The summary judgments were properly granted.

*Judgments affirmed. Jordan, P. J., and Pannell, J., concur.*

ARGUED JANUARY 9, 1970—DECIDED FEBRUARY 5, 1970— REHEARING DENIED MARCH 13, 1970—

*Frank Fuller, Freeman R. Hardisty, McDonald, McDonald & McDonald, Ernest McDonald,* for appellant.

*Long, Weinberg & Ansley, Palmer H. Ansley, Charles M. Goetz, Jr., O'Kelley, Hopkins & Van Gerpen, H. Lowell Hopkins, Lokey & Bowden, Glenn Frick,* for appellees.